**Elise D. McINTOSH, Susan C. Sorrells, Odessa Hollis, Ann E. Kennedy, and JoAnn Scherbring, Appellees,**

v.

**Edward O. TURNER, Appellant.**

No. 85–2086.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 21, 1988.

Decided Nov. 18, 1988.

525

Joseph Moore, Asst. U.S. Atty., St. Louis, Mo., for appellant.

Louis Gilden, St. Louis, Mo., for appellees.

Before ARNOLD and FAGG, Circuit Judges, and BRIGHT, Senior Circuit Judge.

ARNOLD, Circuit Judge.

When this case was last before us, we affirmed a judgment against the defendant

Edward O. Turner, a civilian employee of the United States Army, for $110,005 plus interest and costs. In our view, a jury had permissibly found that Turner violated the plaintiffs' rights under the Due Process Clause of the Fifth Amendment by depriving them, without due process of law, of their right to be considered for promotion on a fair and unbiased basis. *McIntosh v. Weinberger*, 810 F.2d 1411 (8th Cir.1987). We specifically rejected the defendant's argument, grounded primarily on *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), that no action could be brought in this situation for a constitutional tort because of Congress's detailed regulation of the relationship between plaintiffs and their employer, the federal government. 810 F.2d at 1434–36.

The defendant then successfully sought review in the Supreme Court. That Court granted his petition for certiorari, vacated our judgment, and remanded the cause to us for reconsideration in light of its recent decision in *Schweiker v. Chilicky*, —— U.S. ——, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). *Turner v. McIntosh*, —— U.S. ——, 108 S.Ct. 2861, 101 L.Ed.2d 898 (1988).[1]

We have reconsidered the case in light of *Chilicky* and now conclude that plaintiffs' constitutional-tort theory cannot survive the teaching of that case. *Chilicky* arose in the quite different context of social-security benefits, but it nonetheless has distinctly unfavorable implications for *Bivens* actions in any field in which Congress has acted pervasively. The *Chilicky* Court, speaking generally, counselled the lower courts to "respond[ ] cautiously to suggestions that *Bivens* remedies be extended into new contexts." 108 S.Ct. at 2467. And in particular, when Congress has heavily regulated a certain subject—like federal employment—but has said nothing about a right of action for constitutional violations, no such right of action should be recognized under *Bivens* unless "congressional inaction has ... been inadvertent." *Id.* at 2468.

1. Justices Brennan and Blackmun dissented. They would have denied certiorari, leaving our decision undisturbed.

When the design of a government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies.

*Ibid.*

The result is a sort of presumption against judicial recognition of direct actions for violations of the Constitution by federal officials or employees. If Congress has not explicitly created such a right of action, and if it has created other remedies to vindicate (though less completely) the particular rights being asserted in a given case, the chances are that the courts will leave the parties to the remedies Congress has expressly created for them. Only if Congress's omission to recognize a constitutional tort claim was "inadvertent" will the courts be free to allow such a claim. It may be true that injured citizens will thus receive less than " 'complete relief'," 108 S.Ct. at 2468, but that is a decision that Congress has both the power and the competence to make. To some it may seem odd that congressional silence can, in effect, limit the right to be fully compensated for constitutional wrongs, but that is the message of *Chilicky,* and we are obliged to heed it.

What does all this mean for the present case? When the case was before us the first time, we were influenced by the Supreme Court's statement in *Bush* that the plaintiff employee there had been given "meaningful remedies" by Congress. *Bush v. Lucas, supra,* 462 U.S. at 368, 103 S.Ct. at 2406. The word "meaningful," we thought, required us to determine whether Congress had provided substantial relief for the constitutional wrong complained of, relief at least roughly comparable to, though falling somewhat short of, that available in a *Bivens* action. Defendant suggested that the plaintiffs in the present case could have sought corrective action by the Office of the Special Counsel (OSC) of

the Merit Systems Protection Board. We did not consider this remedy adequate to bar a *Bivens* action. Among other points, we noted that an aggrieved employee cannot invoke OSC processes as of right—the Special Counsel has discretion to decide whether to institute a proceeding, 5 U.S.C. §§ 1206(b)(3)(A), (h)—and that OSC cannot award affirmative relief to an aggrieved employee—it can only discipline the offending party, 5 U.S.C. § 1207(b). 810 F.2d at 1435–36. In holding this remedy inadequate, we relied principally on *Kotarski v. Cooper,* 799 F.2d 1342 (9th Cir.1986).[2]

Having reconsidered this reasoning in light of *Chilicky,* we feel compelled to abandon it. Congress consciously referred to violation of an employee's constitutional rights as one of the prohibited personnel practices for which the OSC disciplinary process was available. H.R.Rep. No. 1717, 95th Cong., 2d Sess. 131 (1978), U.S. Code Cong. & Admin.News 1978, 2723. It did not provide for a damages action for such a violation. In view of the explicit reference to constitutional rights in the legislative history, we cannot say that the omission of a damages remedy was inadvertent. The teaching of *Chilicky* therefore requires us to decline to entertain a *Bivens* action. Congress knew that wrongs of this kind would occur, and it apparently believed that the OSC process would adequately address them. That, at least, is a fair inference from the legislative history of the Civil Service Reform Act of 1978, which specifically creates the OSC process and is silent as to damages. It might be argued that Congress must have known about *Bivens,* and that congressional silence therefore means that *Bivens* is unaffected. But that argument is flatly inconsistent with *Chilicky.*

We could elaborate our reasons for this conclusion at greater length, but instead we choose simply to refer the reader to *Spagnola v. Mathis,* 859 F.2d 223 (D.C.Cir. 1988) (per curiam) (en banc). The case is directly in point. It holds that the OSC

**2.** On June 27, 1988, the same day it remanded this case to us, the Supreme Court also vacated and remanded *Kotarski* for reconsideration in

light of *Chilicky.* —— U.S. ——, 108 S.Ct. 2861, 101 L.Ed.2d 897.

remedy is adequate to bar a *Bivens* action, and explains how this holding is required by *Chilicky.* We are not bound by *Spagnola,* of course, but we find its reasoning persuasive, and we would be reluctant, anyway, to create a conflict between circuits. The attitude of one circuit to the holdings of one of its sisters, we think, should be one of reasonable deference. We should not differ from those holdings unless we believe their rationale is seriously flawed. We have no such conviction in the present case. Indeed, it would be hard to come up with a fair interpretation of *Chilicky* that would justify a result contrary to that reached by the D.C. Circuit. Our decision to follow *Spagnola* is reinforced by the fact that it is a unanimous en banc opinion, a rare bird in any circuit.

Accordingly, the judgment in favor of the plaintiffs on their *Bivens* claim must be reversed, and the cause remanded to the District Court with directions to dismiss that claim with prejudice. The request of plaintiffs-appellees for oral argument is denied. We cannot think of anything they might say that would counteract the manifest force of *Chilicky* and *Spagnola.*

It is so ordered.[3]

**3.** We believe this litigation has now been finally concluded, with the possible exception of the plaintiffs Kennedy's and Scherbring's age claims. These claims were remanded to the District Court for further proceedings. 810 F.2d at 1426. We do not know what has happened to them on remand.