**Joseph FEIT, Plaintiff–Appellant,**

v.

**John WARD and Eugene Grapa, Defendants–Appellees.**

**No. 88–2553.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 5, 1989.

Decided Sept. 26, 1989.

---

Steven J. Schooler, Lawton & Cates and Steven A. Brezinski, Axley & Brynelson, and Menzi L. Behrnd–Klodt, Madison, Wis., for Joseph Feit, plaintiff-appellant.

David C. Sarnacki, Asst. U.S. Atty., Office of the U.S. Atty., Madison, Wis., Richard A. Olderman, Dept. of Justice, Civ. Div., Appellate Staff, and Barbara L. Herwig, Dept. of Justice, Civ. Div., Appellate Section, Washington, D.C., for John Ward and Eugene Grapa, defendants-appellees.

Before POSNER, COFFEY and KANNE, Circuit Judges.*

COFFEY, Circuit Judge.

Plaintiff Joseph Feit appeals the district court's dismissal of his suit against the defendants, John Ward and Eugene Grapa, his supervisors while he was employed with the United States Department of Agriculture Forest Service ("Forest Service"). Feit alleges they were responsible for the termination of his employment in violation of his first amendment rights. We affirm.

I.

Feit was a seasonal forestry technician employed by the United States Forest Service in Park Falls, Wisconsin. Feit was originally hired in the summer of 1982, and was hired every summer thereafter up to and including the summer of 1987. On April 26, 1987, the day before Feit was scheduled to commence his 1987 employment, he attended and participated in a rally organized to protest native American spearfishing in northern Wisconsin. Feit was arrested at the rally and charged with disorderly conduct.[1]

On May 13, 1987, defendants Ward and Grapa informed the plaintiff that his employment with the Forest Service was being terminated due to his involvement in the native American spearfishing protest. After Ward and Grapa terminated Feit's employment, they directed other Forest Service employees not to attend protests, public benefits or other meetings concerning the issue of native American spearfishing rights.

---

* This opinion was circulated among all judges of this court in regular active service pursuant to Circuit Rule 40(f). No judge favored a rehearing *en banc* on the question of disapproving Part III of *Egger v. Phillips,* 710 F.2d 292 (7th Cir.) (*en banc*), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983).

1. The disorderly conduct charge was subsequently dropped on August 18, 1987.

On March 16, 1988, Feit commenced this action against Ward and Grapa in their individual capacities[2] in the Circuit Court for Price County, Wisconsin. In his complaint Feit alleged that his termination of employment for participating in the anti-spearfishing rally violated his first amendment rights and that he was without an administrative remedy to redress his allegedly unconstitutional termination. Feit requested compensatory damages in the amount of $50,000 premised on his "loss of employment, loss of wages, loss of employment benefits, embarrassment, emotional distress, mental anguish and humiliation." Feit also sought punitive damages of $15,000 against each defendant, as well as an award of costs and attorneys' fees. In addition to seeking monetary relief, Feit requested that the district court issue a declaratory judgment holding the defendants' policy prohibiting Forest Service employees from participating in spearfishing protests as violative of the first amendment, as well as a permanent injunction barring the defendants "from disciplining and/or discharging employees for exercising their First Amendment rights."

On April 15, 1988, the defendants removed this action to the United States District Court for the Western District of Wisconsin pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446(d). On May 16, 1988, the defendants filed a motion to dismiss for failure to state a claim upon which relief could be granted. The district court found that under *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), a damages remedy is unavailable to the plaintiff because the Civil Service Reform Act of 1978 ("CSRA"),[3] the "statutory scheme for federal employee relations," does not create remedies for seasonal employees such as Feit. The court also concluded that Feit's claims for declaratory and injunctive relief "have been mooted by the termination of his employment.... Plaintiff is no longer a Forest Service employee who would be affected by the defendants' actions and does not have standing to sue." Accordingly, the district court, on July 12, 1988, dismissed Feit's action against the defendants.

Feit filed this appeal on August 3, 1988, arguing that the district court erred in dismissing his claim for damages because, as a seasonal employee, he has no remedy under the CSRA to redress the defendants' violation of his first amendment rights. Feit further argues that his claims for declaratory and injunctive relief fall within the "capable of repetition, yet evading review" exception to the mootness and standing doctrines, and thus were improperly dismissed by the district court.

## II.

■ Feit's first allegation of error is that the district court improperly dismissed his claim for damages against Ward and Grapa for their allegedly unconstitutional termination of his employment with the Forest Service. As an initial matter we note that Feit's damages action is premised on the constitutional tort theory first enunciated in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *Bivens*, the petitioner alleged that federal agents subjected him to arrest and the unlawful search of his home in violation of the fourth amendment and sought damages based on the agents' unconstitutional conduct. Despite the absence of a federal statutory basis for the plaintiff's damages claim, the Supreme Court held that the Constitution itself supports a private cause of action and that the petitioner was entitled to recover damages from the agents for their violation of his fourth amendment rights. The Supreme Court has subsequently recognized *"Bivens* actions" for money damages based on violations of the fifth amendment's due process clause, *see Davis v. Passman*, 442

2. Feit's complaint did not name the defendants in their official capacities. That is, he did not sue the defendants in their capacity as supervisory officials of the United States Department of Agriculture Forest Service.

3. Pub.L. No. 95–454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.).

U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and the eighth amendment, *see Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). A plurality of this court, sitting *en banc,* has held that a *Bivens* action is available to redress violations of the first amendment, the constitutional provision Feit claims Ward and Grapa violated in discharging him due to his protest of native American spearfishing activities. *See Egger v. Phillips,* 710 F.2d 292 (7th Cir.), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983).

In recognizing that "the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right," *Carlson,* 446 U.S. at 18–19, 100 S.Ct. at 1471, the Supreme Court has also stated that plaintiffs alleging constitutional violations are precluded from maintaining *Bivens* actions in two situations:

"The first is when the defendants demonstrate 'special factors counseling hesitation in the absence of affirmative action by Congress.' The second is when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective."

*Id.* at 18–19, 100 S.Ct. at 1471 (emphasis in original and citations omitted). *Accord Bivens,* 403 U.S. at 396–97, 91 S.Ct. at 2004–05; *Davis,* 442 U.S. at 245–47, 99 S.Ct. at 2277–78. It is uncontested that Congress has not explicitly declared the remedies provided in the CSRA to be substitutes for *Bivens* actions. Thus, the relevant inquiry in this case is whether there are "special factors counseling hesitation" in recognizing Feit's *Bivens* action against the defendants.

In *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Supreme Court employed the "special factors" analysis in considering the propriety of a federal employee's *Bivens* action seeking damages against his supervisors for demoting him in violation of his first amendment rights. Although Bush invoked his administrative and statutory remedies to obtain reinstatement to his former position with full back pay, the Supreme Court assumed that Bush's "civil service remedies were not as effective as an individual damages remedy and did not fully compensate him for the harm he suffered." *Id.* at 372, 103 S.Ct. at 2408 (footnotes omitted). The Court went on to state, however, that

"[t]he question is not what remedy the Court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue."

*Id.* at 388, 103 S.Ct. at 2416–17. After concluding that Bush's *Bivens* claim "ar[ose] out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States," *id.* at 368, 103 S.Ct. at 2406, the Court held that the creation of a *Bivens* remedy in favor of the petitioner would be inappropriate, because Congress, as opposed to the Court, "is in a better position to decide whether or not the public interest would be served by creating it." *Id.* at 390, 103 S.Ct. at 2417.

In this case, the district court found that under *Bush,* "the federal employment relationship is a special factor counseling hesitation in creating a judicial remedy," and thus, that Feit "is precluded from bringing an action under the Constitution for damages [against his federal employers]." Feit contends that the Supreme Court's rationale in *Bush* is not controlling on the question of whether this court should authorize his *Bivens* action against the defendants because, unlike the petitioner in *Bush,* he is without an administrative or judicial remedy under the CSRA to redress the alleged constitutional violation committed by the defendants.

At the outset, we disagree with Feit's assertion that he is without a remedy under the CSRA, when, in fact, the CSRA provides Feit and other similarly situated fed-

eral employees with an avenue for raising alleged constitutional violations.

> "The CSRA ... divides federal employees into four broad groups: (1) those in the 'competitive civil service'; (2) those who are 'preference eligible' [*see* 5 U.S.C. § 2108(3) ]; (3) those in the 'excepted' civil service; and (4) 'probationers,' being those who have one year or less of service. The substantive rights and procedural protections to which any particular employee is entitled often depend upon where he or she falls in this typology. In general, the CSRA provides competitive and preference eligible employees more extensive rights and protections than it provides to excepted and probationary employees."

*Harrison v. Bowen*, 815 F.2d 1505, 1510 (D.C.Cir.1987) (footnote omitted). As a seasonal employee, Feit was a member of the "excepted" civil service, *see* 5 C.F.R. 213.3102(m)(1), meaning that he was entitled to file a complaint with the Office of Special Counsel ("OSC") of the Merit Systems Protection Board ("MSPB"). The CSRA authorizes the OSC to "receive any allegation of a prohibited personnel practice." *See* 5 U.S.C. §§ 1206 and 2302(a)(2)(B). It is beyond dispute that the term "prohibited personnel practice" encompasses violations of a federal employee's constitutional rights.[4]

Once the OSC receives an allegation of a prohibited personnel practice, the Special Counsel is authorized to investigate the charges himself, *see* 5 U.S.C. § 1206(a)(1), or require the head of the federal agency employing the complainant to conduct the investigation. *See* 5 U.S.C. § 1206(b)(3)(A). If the investigation reveals "that there are reasonable grounds to believe that a pro-

hibited personnel practice has occurred," the OSC is required to report this conclusion to the MSPB, the agency involved, and the Office of Personnel Management. In addition, the OSC may recommend corrective action to the agency involved. 5 U.S.C. § 1206(c)(1)(A).[5] If the agency fails to implement the recommended corrective action, the OSC may initiate a proceeding before the MSPB to compel the agency to take the recommended corrective action. 5 U.S.C. § 1206(c)(1)(B). Thus, Feit's claim that he was discharged in violation of the first amendment is "fully cognizable" within the CSRA, as were the first amendment claims raised by the petitioner in *Bush*. *See Bush*, 462 U.S. at 386, 103 S.Ct. at 2415.

Feit concedes that he had the right to petition the OSC alleging that the defendants violated his constitutional rights in terminating his employment based on his participation in the anti-spearfishing rally. Nonetheless, he persists in his contention that the Supreme Court's holding in *Bush* does not bar this court from recognizing his *Bivens* action against the defendants. Citing the Court's references to the meaningful remedies available to the employee in *Bush*, *see id.* 462 U.S. at 368, 386, 103 S.Ct. at 2406, 2415, Feit argues that under *Bush*, *Bivens* actions are precluded only where the CSRA provides the aggrieved employee with some "meaningful" remedy to redress alleged constitutional violations. Feit next contends that the OSC remedy is ineffective, and thus not "meaningful," to redress the alleged violation of his first amendment rights because the Special Counsel has absolute discretion in deciding whether or not an investigation of a claim is warranted, as well as whether a recom-

---

**4.** Specifically, the definition of "prohibited personnel practice" includes the "tak[ing] or fail[ure] to take any ... personnel action if the taking or failure to take such action violates any law, rule or regulation implementing, or directly concerning, the merit system principles contained in § 2301 of this title." 5 U.S.C. § 2302(b)(11). One of these merit system principles provides that "[a]ll employees ... should receive fair and equitable treatment in all as-

pects of personnel management ... with proper regard for their ... constitutional rights." 5 U.S.C. § 2301(b)(2).

**5.** 5 U.S.C. § 1206(b)(4)(E) defines "corrective action" to include: "(i) changes in agency rules, regulations, or practices; (ii) *the restoration of any aggrieved employee;* (iii) disciplinary action against any employee; and (iv) referral to the Attorney General of any evidence of a criminal violation." (Emphasis added).

mendation for corrective action is proper.[6] Feit concludes that this lack of a "meaningful" remedy distinguishes his case from that of the employee in *Bush* and urges us to authorize his *Bivens* action against Ward and Grapa.

The defendants argue that Feit's attempt to distinguish *Bush* based on the "meaningfulness" of his CSRA remedies has been foreclosed by *Schweiker v. Chilicky,* — U.S. ——, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988)—the Supreme Court's most recent application of the "special factors" doctrine. Although conceding that prior to *Chilicky* there was a dispute on the question of whether *Bush* requires a separate inquiry into the meaningfulness of the particular remedies the aggrieved employee has available under the CSRA,[7] the defendants maintain that *Chilicky* clearly mandates that under the "special factors" doctrine, the meaningfulness of the plaintiff's particular remedies is irrelevant to the question of whether a *Bivens* remedy is available to redress violations of the plaintiff's constitutional rights.

In *Chilicky,* three individuals receiving Social Security disability benefits filed suit against various state and federal disability review officials alleging that the officials had terminated their benefits in violation of their due process rights. Although the plaintiffs had been restored to disabled sta-tus and awarded retroactive disability benefits, they sought money damages from the officials under the authority of *Bivens* for emotional distress and other injuries proximately caused by the officials' unconstitutional termination of their benefits. The Supreme Court held that a *Bivens* remedy was unavailable to the plaintiffs, stating:

"Congress is the body charged with making the inevitable compromises required in the design of a massive and complex welfare benefits program.... Congress has discharged that responsibility to the extent that it affects the case before us, and we see no legal basis that would allow us to revise its decision."

108 S.Ct. at 2470–71.

In reaching this conclusion, the Court found that "[t]he case before us cannot reasonably be distinguished from *Bush v. Lucas,*" noting that in both cases Congress created elaborate systems to protect the rights of the plaintiffs, but failed to provide "complete relief" in the form of a damages remedy. *Id.* at 2468. The court stated that the "special factors" doctrine "include[s] an appropriate judicial deference to indications that congressional action has not been inadvertent. When the design of a government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may oc-

---

6. Although under the CSRA the Special Counsel has broad discretion in determining whether to investigate claims alleging prohibited personnel practices, as well as whether to recommend corrective action, we are of the opinion that the plaintiff's assertion that this discretion is absolute is without a sound legal basis. "The legislative history of the CSRA reveals that the Special Counsel can decline to investigate a charge only if it 'appears groundless and frivolous on its face.'" *Pinar v. Dole,* 747 F.2d 899, 908 (4th Cir.1984) (quoting S.Rep. No. 969, 95th Cong., 2d Sess. (1978)), *cert. denied,* 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985).

7. "Whether the Court intended *Bush* to bar damages actions for those employees or applicants for whom the CSRA remedies are not so complete [as the remedies available to the employee in *Bush* ] has been the source of great debate." *Spagnola v. Mathis,* 859 F.2d 223, 226 (D.C.Cir. 1988) (*en banc* ). Many courts considering this question prior to *Chilicky* conducted "a detached inquiry into the meaningfulness of the particular remedies provided to individual claimants under the CSRA." *Id.* at 226 (emphasis in original). *See, e.g., McIntosh v. Weinberger,* 810 F.2d 1411, 1434–36 (8th Cir.1987), *vacated and remanded sub nom. Turner v. McIntosh,* —— U.S. ——, 108 S.Ct. 2861, 101 L.Ed.2d 898 (1988); *Spagnola v. Mathis,* 809 F.2d 16, 22–24 (1986), *vacated in part,* 809 F.2d 15 (D.C. Cir.1987); *Kotarski v. Cooper,* 799 F.2d 1342, 1348–49 (9th Cir.1986), *vacated and remanded,* —— U.S. ——, 108 S.Ct. 2861, 101 L.Ed.2d 897 (1988). Other courts considering the question focused solely on the comprehensiveness of the CSRA overall, without regard to the aggrieved employee's particular remedies thereunder. *See, e.g., Hubbard v. EPA,* 809 F.2d 1, 7–9 (1986), *vacated in part,* 809 F.2d 15 (D.C.Cir.1987); *Pinar v. Dole,* 747 F.2d 899, 908–09 (4th Cir.1984), *cert. denied,* 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985); *Hallock v. Moses,* 731 F.2d 754, 757 (11th Cir.1984); *Braun v. United States,* 707 F.2d 922, 926 (6th Cir.1983); *Broadway v. Block,* 694 F.2d 979, 985 (5th Cir.1982).

cur in the course of its administration, we have not created additional *Bivens* remedies."

*Id.* The Court went on to state that "we declined in *Bush* ' "to create a new substantive legal liability ..." because we are convinced that Congress is in a better position to decide whether or not the public interest would be served in creating it.' ... That reasoning applies as much, or more, in this case as it did in *Bush* itself." *Id.* at 2469 (citations omitted).

The *Chilicky* plaintiffs argued that *Bush* was distinguishable from their case because if *Bivens* relief were denied, they would merely receive the benefits "to which they would have been entitled had there been no constitutional violation," *id.*, whereas the plaintiff in *Bush* was reinstated to his former position through the remedies provided in the CSRA. The Supreme Court disagreed, stating:

> "The *Bush* opinion ... drew no distinction between compensation for a 'constitutional wrong' and the restoration of statutory rights that had been unconstitutionally taken away.... *Bush* thus lends no support to the notion that statutory violations caused by unconstitutional conduct necessarily require remedies in addition to the remedies provided generally for such statutory violations.
>
> \*    \*    \*    \*    \*    \*
>
> In light of the comprehensive statutory schemes involved, the harm resulting from the alleged constitutional violation can in neither case be separated from the harm resulting from the denial of the

statutory right. [The plaintiffs'] effort to separate the two does not distinguish this case from *Bush* in any analytically meaningful sense."

*Id.* at 2470.

Simply stated, the Supreme Court's rationale in *Chilicky*, particularly the Court's analysis of *Bush v. Lucas*, makes clear that under the "special factors" analysis, determining whether the *particular* remedies available to the plaintiff claiming a violation of his constitutional rights are meaningful and adequate is unnecessary. Indeed, at one point the *Chilicky* court stated that "[t]he *absence* of statutory relief for a constitutional violation ... does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." 108 S.Ct. at 2567 (emphasis added). Thus, Feit's attempt to distinguish *Bush* by maintaining that he has no meaningful remedy under the CSRA is clearly without merit in light of *Chilicky*.

Four other circuits have rejected similar attempts to distinguish *Bush*, concluding, as we do, that it is clear from *Chilicky* that the "special factors" doctrine does not require a foray into the meaningfulness of a federal employee's remedies within the CSRA. *See Volk v. Hobson*, 866 F.2d 1398, 1402–03 (Fed.Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 2435, 104 L.Ed.2d 991 (1989); *Kotarski v. Cooper*, 866 F.2d 311, 312 (9th Cir.1989); *McIntosh v. Turner*, 861 F.2d 524, 525–26 (8th Cir.1988); *Spagnola v. Mathis*, 859 F.2d 223, 227–29 (D.C. Cir.1988) (*en banc*).[8] On the contrary, the

---

**8.** Of these cases, the procedural histories of *Kotarski, McIntosh* and *Spagnola* are particularly noteworthy. In *McIntosh* and *Kotarski,* the Eighth and Ninth Circuits, respectively, initially interpreted *Bush* to preclude *Bivens* actions only in those situations where the federal employee had another meaningful remedy. Both courts found that a petition to the Office of Special Counsel alleging a "prohibited personnel practice" was inadequate to redress constitutional violations and implied a *Bivens* damages remedy. After issuing the *Chilicky* decision, the Supreme Court granted certiorari in both cases, vacated the courts' decisions, and remanded the actions for consideration in light of that opinion. *See McIntosh v. Weinberger*, 810 F.2d 1411, 1434–36 (8th Cir.1987), *vacated and remanded*

*sub nom. Turner v. McIntosh,* — U.S. ——, 108 S.Ct. 2861, 101 L.Ed.2d 898 (1988); *Kotarski v. Cooper,* 799 F.2d 1342, 1348–49 (9th Cir.1986), *vacated and remanded,* — U.S. ——, 108 S.Ct. 2861, 101 L.Ed.2d 897 (1988). On remand, both courts reversed their prior decisions and held that to imply a *Bivens* action under the circumstances "would improperly disregard the rationale of *Chilicky." Kotarski,* 866 F.2d at 312; *McIntosh,* 861 F.2d at 526.

In *Spagnola,* two panels of the District of Columbia Circuit issued opinions on the same day differing on the question of whether *Bush* precludes all *Bivens* remedies for alleged constitutional violations arising in the federal employment context or only when the aggrieved employee had other meaningful remedies under

"special factors" analysis focuses on the comprehensive nature of the administrative system protecting the rights of the plaintiff, as well as Congress' expertise and authority in the field in question. *See Chilicky,* 108 S.Ct. at 2468–71; *Bush,* 462 U.S. at 380–89, 103 S.Ct. at 2412–17. In *Bush,* the Court determined that the comprehensive nature of the CSRA as the statutory scheme governing the rights and remedies of federal employees, together with Congress' expertise and authority in the area of federal employment, are "special factors counseling hesitation" in the recognition of federal employees' *Bivens* actions against their supervisors. 462 U.S. at 388–90, 103 S.Ct. at 2416–17. Obviously, the same "special factors" counsel our hesitation in recognizing Feit's *Bivens* action against Ward and Grapa. The only remaining question is whether Congress' omission of damages remedies from the CSRA was "inadvertent." *See Chilicky,* 108 S.Ct. at 2468.

As noted above, Feit, as a seasonal employee, could have petitioned the Office of Special Counsel alleging that his supervisors engaged in a "prohibited personnel practice," the definition of which clearly encompasses constitutional violations. Because Congress has provided Feit and others similarly situated with an avenue of relief to redress violations of their constitutional rights, it cannot be said that Congress' omission of a separate damages remedy for constitutional violations from the remedies available under the CSRA was inadvertent. *Kotarski,* 866 F.2d at 312; *McIntosh,* 861 F.2d at 526; *Spagnola,* 859 F.2d at 229. Thus, we hold as a matter of law that a *Bivens* remedy is unavailable to Feit. We refuse to disregard the Supreme Court's mandate in *Chilicky* and create such a remedy.

the CSRA. *Compare Spagnola v. Mathis,* 809 F.2d 16, 22–24 (1986), *vacated in part,* 809 F.2d 15 (D.C.Cir.1987) *with Hubbard v. EPA,* 809 F.2d 1, 7–9 (1986), *vacated in part,* 809 F.2d 15 (D.C. Cir.1987). The Court vacated the portions of the two opinions discussing this issue, and scheduled the matter for rehearing *en banc.* After considering the question in light of *Chilicky,* the Court unanimously held that the comprehensiveness of the CSRA system and Congress' expertise in the field of federal employ-

The plaintiff-appellant argues that our holding is foreclosed by *Egger v. Phillips,* 710 F.2d 292 (7th Cir.) (*en banc*), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). As noted above, in *Egger* a plurality of this court, sitting *en banc,* held that a *Bivens* remedy is available to redress violations of the first amendment. The plaintiff in *Egger* was a former FBI agent who was allegedly transferred and later discharged for criticizing the activities of other agents in the FBI's Indianapolis (Indiana) Field Office. The agent filed suit against his supervisors seeking damages based on his allegation that he had been transferred and discharged in violation of his first amendment rights. The plaintiff argued that because he had no administrative remedy to redress the violation of his constitutional rights, he was entitled to damages under the authority of *Bivens.* The defendant argued that Congress' unwillingness to provide FBI agents with civil service protections and the federal employment relationship itself were "special factors counseling hesitation in entertaining a *Bivens* action arising from [federal] employment." *Id.* at 297. The plurality concluded that the absence of an alternative remedy is a factor in favor of recognizing a *Bivens* action. *Id.* Feit emphasizes the similarity between *Egger* and the present case, urging us to reverse the district court's dismissal of his *Bivens* action based on the holding of the *Egger* plurality. We refuse to do so for the following reasons.

As an initial matter, the portion of *Egger* recognizing the FBI agent's right to bring a *Bivens* action against his supervisors garnered the support of only four out of the eight judges hearing the case. Thus,

ment are " 'special factor[s]' preclud[ing] the creation of a *Bivens* remedy for civil service employees and applicants who advance constitutional challenges to federal personnel claims," concluding that the "adequacy" of the plaintiff's remedies was irrelevant. *Spagnola,* 859 F.2d at 227, 230. We are particularly persuaded by the D.C. Circuit's holding in *Spagnola,* taking note that it is a unanimous *en banc* opinion of the court.

we are not bound by the *Egger* plurality's holding because it fails to represent the views of a majority of this court. *See CTS Corp. v. Dynamics Corp. of America,* 481 U.S. 69, 81, 107 S.Ct. 1637, 1645, 95 L.Ed.2d 67 (1987). *See also Egger,* 710 F.2d at 325 (Posner, J., concurring). More importantly, *Egger* was decided prior to the Supreme Court's decision in *Bush v. Lucas, supra,* holding that in light of the comprehensive nature of the CSRA, *Bivens* remedies are unavailable to federal employees. Although the court considered the Fifth Circuit's opinion in *Bush, see Bush v. Lucas,* 647 F.2d 573 (5th Cir.1981), the plurality determined that it was "of questionable viability, at best." *Egger,* 710 F.2d at 298 n. 5. Because the Supreme Court ultimately affirmed the Fifth Circuit's opinion in *Bush,* "the Fifth Circuit decision had more validity than this Court gave it credit." *Moon v. Phillips,* 854 F.2d 147, 151 (7th Cir.1988). The defendants argue that the Supreme Court's holding in *Bush* implicitly overruled the holding of the *Egger* plurality and that, in any case, the rationale of the *Egger* decision has been explicitly rejected by the Court's decision in *Chilicky.*

The question of whether *Egger* is in contravention of *Bush,* and thus whether *Egger* remains good law, has been discussed by this court on two prior occasions. In both cases we distinguished *Egger* based on the remedies available to the plaintiff-employee in the case before us and the lack of remedies available to the FBI agent in *Egger,* thus passing on the question of *Egger*'s continued validity. *See Moon,* 854 F.2d at 151; *Ellis v. United States Postal Service,* 784 F.2d 835, 840 (7th Cir.1986). We are unable to distinguish *Egger* on this basis. Recognizing that Feit was a seasonal employee and Egger was a full-time FBI Agent, we note that both were members of the "excepted" civil service, *see* 28 U.S.C. § 536 (FBI Agents) and 5 C.F.R. § 213.3102(m)(1) (seasonal employees), and thus lacked the full panoply of procedural protections the CSRA extends to "preference eligibles" and members of the "competitive" civil service. In any case, we have previously determined that under *Chilicky* distinctions based on the "meaningfulness" of an employee's remedies under the CSRA are without merit. Thus, the question of *Egger*'s viability must be addressed.

The *Egger* plurality concluded that the "constitutional rights of federal employees in the workplace which are not protected by statute properly form the basis of a *Bivens* action." 710 F.2d at 298. This conclusion directly contradicts the Supreme Court's statement in *Chilicky* that "[t]he absence of statutory relief for a constitutional violation ... does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." 108 S.Ct. at 2467. Thus, although it may have been questionable in the aftermath of *Bush,*[9] it is evident in light of *Chilicky* that the plurality decision in *Egger* is no longer the law. Accordingly, to the extent *Egger* holds that a remedy for money damages under *Bivens* is available for federal employees to redress the constitutional violations of their supervisors, it is withdrawn as contrary to the Supreme Court's decision in *Chilicky.*

### III.

Feit also contends that the district court erred in dismissing his claims for a declaratory judgment that the defendants' policy prohibiting Forest Service employees from participating in spearfishing protests violated the first amendment and an injunction permanently barring the "defendants from disciplining and/or discharging employees for exercising their First Amendment rights." The district court ruled that Feit lacked standing to assert these claims because "he is no longer a Forest Service employee who would be affected by the defendants' actions...." For the same reason, the district court also ruled that Feit's claims were moot. Feit argues that his claims were not moot (and apparently that he had standing to sue) because his claims fall within the "capable of repetition, yet evading review" exception to the

---

**9.** *See supra* note 7.

mootness and standing doctrines. *See Robinson v. City of Chicago,* 868 F.2d 959, 967–68 (7th Cir.1989) (standing) and *United States v. Fischer,* 833 F.2d 647, 648–49 (7th Cir.1987) (mootness). The defendants argue that in addition to their lack of justiciability, Feit's equitable claims must fail because only government officials can provide this type of relief and Feit's complaint names the defendants only in their personal capacities.[10]

"It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Art. III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons,* 461 U.S. 95, 101, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983). In order to allege an actual case or controversy, a plaintiff must establish that he has a personal stake in the outcome of the case. *Id.* "[W]hen a plaintiff's standing is brought into issue the relevant inquiry is whether ... the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision." *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). Further, when seeking injunctive and declaratory relief, a plaintiff must establish "that he is in immediate danger of sustaining some direct injury." *Robinson,* 868 F.2d at 966. As the Supreme Court stated in *O'Shea v. Littleton,* 414 U.S. 488, 495–96, 94 S.Ct. 669, 675–76, 38 L.Ed.2d 674 (1974): "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects."[11]

In light of these standards we agree with the district court that Feit lacks standing to pursue his equitable claims against the defendants. In his request for declaratory relief, Feit seeks to have the policy of prohibiting Forest Service *employees* from protesting native American spearfishing invalidated as violative of the *employees'* first amendment rights. Similarly, in his request for an injunction, Feit seeks to bar the defendants from disciplining or discharging *employees* for exercising their first amendment rights. Because Feit is no longer an employee of the Forest Service, even if we were to grant the relief he requests, he would not benefit from this relief. Moreover, Feit has failed to establish that he is in immediate danger of injury resulting from the conduct he challenges as unconstitutional—termination in violation of his first amendment rights. Feit is not presently employed with the Forest Service; thus, he is no longer affected by the defendants' actions. Further, Feit, in his complaint, does not seek reinstatement to his former position. Obviously, Feit cannot again be terminated unless and until such time as he is rehired by the United States Forest Service.

Feit argues that this court has jurisdiction over his claims for equitable relief because such claims are "capable of repetition, yet evading review," a doctrine applicable in situations where "a claim is so transitory that a plaintiff may have standing when litigation begins but loses it—loses his personal stake—as the litigation continues." *Robinson,* 868 F.2d at 967. Feit states that because he was terminated on May 13, 1987, and the termination became effective on May 14, 1987, he had no opportunity to litigate his claim as an employee of the Forest Service. However, the *Robinson* court noted that "[t]he capable-of-repetition doctrine does not apply except in those exceptional situations where a plaintiff can reasonably show that he will again be subject to the alleged illegality." *Id.* Since he is no longer a Forest Service employee, he is no longer subject to the Forest Service policy he challenges as illegal.

Feit attempts to avoid the conclusion that he is no longer subject to the allegedly

---

10. Although the district court did not address this argument in dismissing Feit's claims for declaratory and injunctive relief, the defendants raised this argument in their motion to dismiss, and thus, have preserved the question for consideration on appeal.

11. As we noted in *Robinson,* the same standard applies to a claim for declaratory relief. 868 F.2d at 966 n. 5.

illegal policy of the Forest Service by arguing that in light of his past employment with the Forest Service, it is reasonably likely that he will again be employed by the Department and subjected to the policy of the defendants. This allegation is based on pure speculation. The most that can be said for Feit's standing in this regard is that *if* Feit reapplies with the Forest Service, *if* he is rehired, *if* he is again under the supervision of the defendants, *if* he again protests native American spearfishing and *if* the defendants again discharge him based on his anti-spearfishing protests, Feit might conceivably be subjected to the alleged unconstitutional practices of the defendants if the policy has not been changed as of that time. The possibility that all of these contingencies will occur is too remote to bring his claims for declaratory and injunctive relief within the "capable of repetition, yet evading review" exception to the standing doctrine.[12] Thus, we are in agreement with the district court's finding that Feit lacks standing to assert his claims for declaratory and injunctive relief because he is no longer a Forest Service employee and hold that the court properly dismissed that portion of Feit's complaint seeking equitable relief.

Even if Feit had standing to seek equitable relief in federal court, the district court's dismissal of Feit's claims for declaratory and injunctive relief was proper because Feit, in challenging the alleged Forest Service policy prohibiting employees from participating in anti-spearfishing activities, sued the improper defendants. In his complaint Feit seeks relief from the defendants in their individual capacities only. The policy Feit challenges, however, is that of the Forest Service and is carried out by the defendants in their capacities as supervisory Forest Service employees, *i.e.*, in their official capacities. Moreover, the equitable relief Feit requests—a declara-

tion that the policy is unconstitutional and an injunction barring the defendants from implementing the policy in the future—can be obtained only from the defendants in their official capacities, not as private individuals. *See Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir.1987). Thus, Feit's attempt to obtain declaratory and injunctive relief from the defendants in their personal capacities fails to state a claim upon which relief may be granted and his claims were properly dismissed even if he had standing to assert them.

## IV.

Feit's claims for damages and equitable relief against the defendants are without merit. Feit's damages claim, premised on *Bivens*, is precluded because the comprehensive nature of the CSRA statute—the statutory scheme governing the rights of federal employees—and Congress' expertise and authority in the area of federal employer-employee relations are "special factors counseling hesitation" in the creation of *Bivens* remedies. With regard to Feit's claims for declaratory and injunctive relief, Feit lacks standing to pursue these claims as Feit is no longer a Forest Service employee and thus is no longer affected by the policies of the defendants. Accordingly, the district court's dismissal of Feit's action against Ward and Grapa is AFFIRMED.

---

**12.** The remote possibility that these contingencies will occur also bars his claims for equitable relief from falling within this exception as it applies to the mootness doctrine. *See Fischer*, 833 F.2d at 648–49 (stating that in order to fall within this exception to the mootness doctrine there must be a reasonable expectation that the same complaining party will be subjected to the

same action again). Because this is Feit's only challenge to the district court's finding that his equitable claims were mooted by his termination from the employ of the Forest Service, we also affirm the district court's dismissal of Feit's claims for declaratory and injunctive relief on this basis.