NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0152n.06

No. 23-3480

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| BRYAN TESSANNE and RICHARD BRIMER, on their own behalf and on behalf of the class similarly situated, | ) ) ) ) | **FILED** Apr 03, 2024 KELLY L. STEPHENS, Clerk |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| CHILDREN'S HOSPITAL MEDICAL CENTER OF AKRON, | ) ) ) | |
| Defendant-Appellee. | ) ) ) | OPINION |

Before: BOGGS, McKEAGUE, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Richard Brimer and Bryan Tessanne were employees of Children's Hospital Medical Center of Akron (the Hospital). In response to the Centers for Medicare and Medicaid Services' COVID-19 vaccine mandate, the Hospital instituted a vaccination policy, requiring employees to get vaccinated or obtain medical or religious exemptions. Plaintiffs sought religious exemptions, but the Hospital denied them. The Hospital then terminated their employment for failing to be vaccinated against COVID-19. Plaintiffs sued the Hospital on behalf of themselves and all similarly situated employees, arguing that the denial of their requests for religious exemptions, and the resulting terminations, violated their First Amendment rights. The district court dismissed their claims on the ground that the Hospital was not a government actor. For the reasons stated, we AFFIRM.

I.

In November 2021, the Centers for Medicare and Medicaid Services issued an interim final rule that required certain healthcare facilities to ensure that their covered staff received COVID-19 vaccinations, subject to medical and religious exemptions (the CMS mandate). *See Biden v. Missouri*, 595 U.S. 87, 91 (2022) (per curiam). In response, Children's Hospital Medical Center of Akron adopted a policy requiring such vaccinations for its employees, again subject to medical and religious exemptions. Plaintiffs Brian Tessanne and Richard Brimer worked at the hospital. They each requested accommodations from the vaccination policy for religious reasons. But, the complaint alleges, the Hospital "summarily denied" the requests. The Hospital required its employees to be vaccinated by January 11, 2022. Plaintiffs didn't get vaccinated by that date, so the Hospital suspended them, and all such employees, "stating that they would be terminated effective January 27, 2022 if they remained noncompliant with the policy." And that's what happened—plaintiffs lost their jobs on January 27. Still, the Hospital told plaintiffs that it would keep their jobs open until February 27, 2022. If plaintiffs complied with the vaccination policy by that date, they could return to their jobs. If they didn't, they would "have to re-apply for their jobs if they wish[ed] to return to work at [the Hospital]." Although the complaint does not make this clear, the parties' briefing indicates that plaintiffs failed to comply with the vaccination policy and fully lost their jobs as of February 27. A few months later, the government rescinded the CMS mandate. *See* 88 Fed. Reg. 36485, 36485–01 (June 5, 2023).

Plaintiffs sued the Hospital on behalf of themselves and other similarly situated employees, arguing that the Hospital's policy of summarily refusing requests for religious exemptions violated their rights under the Free Exercise Clause of the First Amendment. They sought damages as well as declaratory and injunctive relief, including reinstatement. The Hospital moved to dismiss the

complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The district court granted the motion under Rule 12(b)(1), concluding that it lacked subject-matter jurisdiction because the Hospital is not a state actor who is amenable to suit under the First Amendment. The court also denied plaintiffs leave to amend their complaint. Plaintiffs now appeal.

II.

"Every federal appellate court has a special obligation to assure itself . . . of its own jurisdiction[.]" *Mays v. LaRose*, 951 F.3d 775, 781 (6th Cir. 2020) (alterations in original). Here, three jurisdictional doctrines are at play: standing, mootness, and the requirement of a "substantial" federal question.

*Standing and Mootness.* The Hospital contends that plaintiffs lacked standing to bring their claims for declaratory and injunctive relief. The Hospital didn't raise this argument below, but that is no matter—Article III standing is "jurisdictional and not subject to waiver." *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996).

We assess standing at the time the complaint is filed. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Here, plaintiffs sought five kinds of relief: (1) an injunction commanding the Hospital not to make their terminations final; (2) an injunction commanding the Hospital to engage in an "interactive process" and grant them an exemption from the vaccine mandate; (3) a declaration that the Hospital violated their First Amendment rights by not granting them a religious exemption from the vaccine mandate; (4) reinstatement to their positions; and (5) damages.

The Hospital is right that plaintiffs lacked standing to bring the first of these claims. Plaintiffs lack standing to seek injunctive and declaratory relief for events that occurred wholly in the past. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–03 (1983). To seek such prospective relief, a plaintiff must be facing an imminent risk of future harm. *Id.* at 102; *Golden v. Zwickler*, 394 U.S. 103, 109 (1969). Here, the Hospital provisionally terminated plaintiffs' employment on January 27, 2022, for failing to be vaccinated; but it gave plaintiffs an extra month to procure the vaccine. This meant that their terminations became completely final on February 28, 2022. Plaintiffs didn't file their complaint until March 3, 2022. At that point they were no longer facing imminent termination; they had already been fired. No order from the court could have staved off their dismissal; it had been accomplished before the court's intervention was sought. Plaintiffs lacked standing to seek this relief.

On the other hand, plaintiffs plainly had standing to bring their claims for reinstatement and damages. Each of these seeks relief for harm done in the past. And the three standing requirements—injury in fact, traceability, and redressability—were clearly met. *See TransUnion*, 594 U.S. at 423.

It is a more nuanced question whether plaintiffs had standing to seek an injunction commanding that the Hospital grant them a religious exemption from the vaccine mandate or a declaration that the Hospital violated their constitutional rights by failing to do so. Plaintiffs had already been fired when they filed their complaint. And former employees generally lack standing to seek court-ordered changes at their previous workplaces because they cannot benefit personally from any relief a court might grant. *See Feit v. Ward*, 886 F.2d 848, 857 (7th Cir. 1989) (former federal employee, allegedly discharged in violation of the First Amendment, could not seek declaratory or injunctive relief because any change to employee speech policy could not benefit

him).  But some courts have held that former employees who are seeking reinstatement do have standing to seek such declaratory and injunctive relief because, if successful in gaining reinstatement, they would again be subjected to the employer's allegedly unlawful policies. *See Chen-Oster v. Goldman, Sachs & Co.*, 251 F. Supp. 3d 579, 588 (S.D.N.Y. 2017) (collecting cases); *see also Feit*, 886 F.2d at 857 (noting that the plaintiff had not sought "reinstatement to his former position").  We need not weigh in on this question because these claims face a different problem—mootness. *See Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 4 (2023) (courts may address standing and mootness "in any order").

Even when a plaintiff has standing at the beginning of a case, events occurring "during the pendency of the litigation" may strip a court's eventual decision of "any practical effect." *Resurrection Sch. v. Hertel*, 35 F.4th 524, 528 (6th Cir. 2022) (en banc) (citation omitted).  When that happens, the court loses jurisdiction and "the case is moot." *Id.* (citation omitted).  Plaintiffs allege that the federal government's CMS mandate was responsible for the Hospital's actions.  But the government rescinded the CMS mandate on June 5, 2023.  We have held that recissions of similar pandemic-era policies mooted claims to enjoin them or have them declared unlawful. *See Livingston Educ. Serv. Agency v. Becerra*, No. 22-1257, 2023 WL 4249469, at *1 (6th Cir. June 29, 2023) (Head Start vaccine mandate); *Resurrection Sch.*, 35 F.4th at 528–30 (statewide mask mandate). So an order requiring the Hospital to give plaintiffs vaccine exemptions upon reinstatement could have no practical effect.  That makes this claim moot, along with the accompanying claim for declaratory relief.

In sum, only plaintiffs' claims for reinstatement and damages survive the standing and mootness inquiries.[1]

*Substantial Federal Question.* Standing and mootness resolved, we turn to the next potential jurisdictional issue—the district court's dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1). The district court offered two related reasons why it lacked jurisdiction. First, the court noted that the Declaratory Judgment Act alone does not confer subject-matter jurisdiction. *See Heydon v. MediaOne of Se. Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003). The Act vests courts with discretion to fashion a remedy, but subject-matter jurisdiction must come from another source. *Id.* Second, the court concluded that the First Amendment, the only potential source of subject-matter jurisdiction, did not give plaintiffs a cause of action because they had not alleged facts showing government action. We agree with each of these premises. But we disagree with the conclusion that they entail a lack of jurisdiction.

---

[1] That is not to say that plaintiffs may pursue either claim. The district court determined that plaintiffs couldn't seek damages against the Hospital because allowing them to do so would require an impermissible extension of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 287 (6th Cir. 2023) (suggesting that no *Bivens* action would lie in an analogous context). Plaintiffs don't challenge this ruling on appeal and thus have abandoned the issue. *See United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006) ("An appellant abandons all issues not raised and argued in its initial brief on appeal." (cleaned up)).

Nor do we decide whether plaintiffs would have a cause of action to seek reinstatement, even if they could show government action. As *Ciraci* noted, 42 U.S.C. § 1983, the common vehicle for asserting violations of federal civil rights, doesn't apply in cases like this, where plaintiffs assert that the Hospital is a federal actor, not a state one. 62 F.4th at 287. And while "claimants sometimes may 'sue to enjoin unconstitutional actions by state and federal officers' even in the absence of a statutory cause of action," "[i]t is not clear whether, as a matter of historical equitable practice, we may infer, imply, or create a cause of action for" affirmative equitable relief like reinstatement. *Id.* (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015)). But since that question is not briefed and doesn't go to our jurisdiction, we need not address it. *Id.*

In all but the most extreme cases, "the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Shapiro v. McManus*, 577 U.S. 39, 45 (2015) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)). There are exceptions, to be sure. Claims that are "'essentially fictitious,' 'wholly insubstantial,' [or] 'obviously frivolous'" fail to raise "a substantial federal question" and may be dismissed for lack of subject-matter jurisdiction. *Id.* (quoting *Goosby v. Osser*, 409 U.S. 512, 518 (1973)). But such cases are rare. "[T]he limiting words 'wholly' and 'obviously' have cogent legal significance," so even marginal claims can generally clear the "low bar" required to state a "substantial federal question for jurisdictional purposes." *Id.* at 45–46 (quoting *Goosby*, 409 U.S. at 518). We think this complaint gets over the hurdle. But, as we explain below, the case is still properly dismissed for failure to state a claim.

## III.

Despite the district court's mistaken reliance on Rule 12(b)(1), we may still affirm under Rule 12(b)(6). The Hospital moved to dismiss on Rule 12(b)(6) grounds below. And a conclusion that plaintiffs failed to establish that the Hospital was a government actor would equally compel dismissal for failure to state a claim. *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254 (2010) ("Since nothing in the analysis of the courts below turned on [the district court's mistaken reliance on Rule 12(b)(1)], a remand would only require a new Rule 12(b)(6) label for the same Rule 12(b)(1) conclusion."); *see also Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 426–29 (6th Cir. 2016) (concluding that the district court erred by dismissing plaintiff's APA claim for lack of subject-matter jurisdiction under Rule 12(b)(1) but nonetheless affirming because plaintiff failed to state a claim under Rule 12(b)(6)).

"[M]ost rights secured by the Constitution are protected only against infringement by governments." *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978). So the question at the heart of this case is whether the Hospital, a private entity, was nonetheless a government actor when it denied religious exemptions to plaintiffs and terminated their employment. Our recent opinion in *Ciraci v. J.M. Smucker Co.*, 62 F.4th 278 (6th Cir. 2023), largely answers the question for us.

To decide whether there is government action, we ask "whether the specific conduct of which a plaintiff complains is fairly attributable to the government." *Id.* at 281 (cleaned up). To answer that question, courts ask a few more. First, "[d]oes the private company's conduct involve a traditionally exclusive governmental function?" *Id.* Second, is the "conduct 'entwined with' government decisions" or is there a "close 'nexus' between the [government] and the challenged conduct?" *Id.* (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295–96 (2001)). In addition, we sometimes ask whether the government has "compelled the company's action." *Id.* That inquiry is most commonly, and perhaps best, left for situations in which an individual seeks to hold the *government* liable for the actions of a private entity. *See id.* at 283. As *Ciraci* explained, "in the usual case, state action arises when the State provides a mantle of authority that enhances the power of a harm-causing individual actor." *Id.* at 286 (cleaned up). "When government regulations demand a particular outcome, however, they deplete rather than enhance private power." *Id.* At a minimum, our caselaw makes clear "that compliance with federal law or status as a federal contractor by itself does not make a private entity a public one." *Id.* We see no reason why this rule would not also apply to federal grantees, such as the Hospital here.

*Ciraci* involved circumstances nearly identical to this case. First, a private entity defendant—J.M. Smucker Company. *Id.* at 279. Second, a government-imposed vaccine

mandate—in *Ciraci*, the federal-contractor mandate. *Id.* at 280. Third, the creation of a company-wide vaccination policy and the denial of religious exemptions. *Id.* Fourth, the same legal question we face now—was the company a government actor such that it could be sued for violating the plaintiffs' First Amendment rights? *Id.*

*Ciraci* answered in the negative. The court found that the company did not engage in a traditional governmental function. *Id.* at 282. Making "jelly, peanut butter, and other products in the Smucker's lineup" was not something normally left for the government. *Id.* Here, plaintiffs make no assertion that providing healthcare to private individuals is a traditional government function. Next, the actions of the government and J.M. Smucker Company were not so entwined as to form collective government action. *Id.* The company didn't conspire with the government, deny the requests for religious exemption with government assistance, or "connect[] itself to joint action with the government in some other cognizable way." *Id.* at 282–83. So too here—the complaint contains no such allegations.

That leaves the government-compulsion theory. Again, *Ciraci* tells us that the government has not compelled the Hospital's actions in a way that would make the Hospital a state actor.

In *Ciraci,* we explained that "[w]hen a private company complies with federal law, that does not by itself make the company a government actor." *Id.* at 284. In *Ciraci*, "[a]t most, Smucker's required claimants to vaccinate themselves in accordance with the President's Executive Order." *Id.* at 286. But that did not make Smucker's a government actor. *Id.* The same is true here.

Plaintiffs do not exactly complain, however, that the government forced the Hospital to require their vaccinations. As in *Ciraci*, the plaintiffs' "specific" complaint is that the Hospital failed to grant them religious exemptions from the vaccine mandate. *Id.* at 283. In *Ciraci,* we

explained that the federal-contractor mandate "did not tell Smucker's to deny exemptions to anyone." *Id.* Rather, "[i]t told Smucker's to *grant* religious exemptions to those legally entitled to them, and let Smucker's decide on its own who qualified." *Id.* In other words, we explained, "[t]he claimants contend that Smucker's has exercised its discretion under the Executive Order stingily, not that Smucker's has been dragooned into denying an exemption." *Id.* That being the case, there was no "coercion" by the government that could have triggered government actor status. *Id.* at 284.

We face an identical situation here. Through the CMS mandate, the government required vaccination of the Hospital's employees, told the Hospital to grant religious exemptions, and gave the Hospital discretion to decide who qualified. The complaint alleges that, despite the allowance for religious exemptions, the Hospital nonetheless "denied hundreds of these requests" and did so "summarily." R. 1, Complaint, PageID 3, 6. So, just as in *Ciraci*, plaintiffs find fault in a private entity's application of government policies, not in the government policies themselves. It follows that no governmental action exists. *Ciraci*, 62 F.4th at 279.

Plaintiffs offer just two responses. First, they point out that *Ciraci* involved a different federal vaccine mandate. That's true, but it's a distinction without a difference. For all the reasons discussed above, *Ciraci* is nearly identical to the instant case. Second, they argue that the threat of losing Medicare or Medicaid funding is more coercive than losing a single contract with the government. That observation may be true as well, but it is again beside the point. *Ciraci* did not turn on the size of the inducement offered to accept terms that included a vaccine mandate. *Ciraci* concluded that the terms of the mandate did not require the private employer to deny religious exemptions to the plaintiffs. *Id.* at 284 ("[E]ven if the claimants plausibly pleaded coercion

generally, they have pleaded *nothing* specifically that shows the federal policy 'dictated' their employer's decision to deny their exemptions."). The same is true here.

Plaintiffs have failed to establish that the Hospital was a government actor and thus have failed to state a claim under Rule 12(b)(6). The district court therefore reached the right result, albeit under the wrong procedural rule. *See Morrison*, 561 U.S. at 254; *Haines*, 814 F.3d at 426–29.

IV.

Plaintiffs also challenge the district court's decision to deny them leave to amend the complaint. The district court denied the motion because plaintiffs "summarily ask[ed] for leave to cure any deficiencies" in their brief opposing the motion to dismiss without any elaboration on what facts they would allege to make the complaint sufficient. We review the district court's decision for an abuse of discretion. *Crosby v. Twitter, Inc.*, 921 F.3d 617, 627 (6th Cir. 2019). There was no abuse here. Our caselaw is clear—a district court doesn't abuse its discretion by denying leave to amend where, as here, the plaintiffs didn't formally move for leave to amend and instead requested leave to amend only in their response to the motion to dismiss without explaining what additional facts they would offer to satisfy the deficiencies of the initial complaint. *Id.* at 628.

\* \* \*

We AFFIRM. Because we affirm on different grounds—for failure to state a claim under Rule 12(b)(6), rather than for a lack of jurisdiction under Rule 12(b)(1)—we REMAND to the district court for it to enter judgment accordingly.