**In re Dianna SIMMONS, Debtor.**

**Dianna SIMMONS and Michael G. Sebastian, Plaintiffs,**

v.

**FORD MOTOR CREDIT CO., Defendant.**

**Bankruptcy No. 96 B 20501.
Adversary No. 98 A 00855.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Sept. 25, 1998.

Daniel A. Edelman, Edelman & Combs, Erik A. Martin, Chicago, IL, for Plaintiff.

Robert N. Lane, Lovell, White & Durrant, Chicago, IL, for Defendant.

Craig Phelps, Chicago, IL, Chapter 13 Trustee.

## MEMORANDUM OPINION

JOAN H. LEFKOW, Bankruptcy Judge.

In this adversary proceeding, the Debtor[1] challenges certain claims filing practices of Ford Motor Credit Company ("Ford Credit"), a lender under many retail installment contracts financing the purchase of automobiles. Because the Debtor would bring this suit as a class action to redress systemic abuses relating to the filing of claims in Chapter 13 cases, some generalized observations will be made before turning to the details of the Debtor's complaint.

### General Observations Concerning the Treatment of Secured Claims in Chapter 13 Cases

Although a lender like Ford Credit holds a security interest in a borrower's automobile, should the borrower file a petition for relief under Chapter 13 of the Bankruptcy Code ("Code"), 11 U.S.C. § 101 et seq., the borrower is permitted to modify the lender's rights through the process commonly known as "lien stripping." See In re Johnson, 213 B.R. 552, 554–55 (Bankr.N.D.Ill.1997). Where a borrower chooses to modify a secured creditor's rights pursuant to § 1322(b)(2), he or she will bifurcate the creditor's claim into secured and unsecured components. Under Code § 506(a), a secured creditor holds a secured claim to the extent of the value of its collateral, and an unsecured claim to the extent the value of the collateral is less than the balance due on the debtor's account.

Section 1325(a)(5) provides that the amount distributed to a secured creditor under a Chapter 13 plan must not be less than the amount of its secured claim. However, there is no minimum required payment on an unsecured claim, other than the requirement under § 1322(a)(4) that the unsecured creditor be paid not less than the amount that it would receive in a liquidation under Chapter 7. Thus, depending on the terms of the plan, an unsecured creditor may receive only a small percentage of the amount of its claim. To the extent that a secured creditor's claim is undersecured, unless the Chapter 13 plan is a 100% plan, the creditor will not receive full payment on its claim.

Secured creditors potentially incur large losses on their loans where borrowers seek relief under Chapter 13. For example, where a debtor has purchased an automobile shortly before filing for Chapter 13, the vehicle will have depreciated significantly in the small interval of time between the purchase and the bankruptcy filing. Although there may have been few or even no payments on the loan, the debtor will only be obligated to pay the value of the vehicle over the course of the Chapter 13 plan. If the secured creditor is paid the requisite amount under § 1325(a)(5), it will not be allowed to exercise its remedy of repossessing the vehicle.

The complaint in this case focuses on the process for determining the amount of an automobile lender's secured claim in a Chapter 13 case. The first step in that process is for the debtor to estimate the value of his or her automobile on the schedules attached to the Chapter 13 petition. This initial determination of value is made by the debtor, who is not required to obtain an appraisal or consult published guides of value before breaking the creditor's claim into secured and unsecured components. Conceivably, so as to minimize the payments that he or she must make under the Chapter 13 plan, the debtor may make an estimate of value that is less than the vehicle is worth. The creditor, on the other hand, generally does not have access to the vehicle. Where the debtor controls the vehicle, the creditor can only speculate as to whether the vehicle's condition is such that it

---

1. The court does not consider the claim of co-plaintiff Michael G. Sebastian, as this adversary proceeding was not filed in his bankruptcy case.

would sell for the same price as have other vehicles of the same model and year. If the creditor does not file a proof of claim, it will be paid the value on the debtor's schedules on account of its secured claim.

In this court's experience, it is not uncommon for a secured creditor in a Chapter 13 case to file a proof of claim in which it characterizes the full amount of its loan balance as a secured claim. Although the Official Form 10 proof of claim advises secured creditors that their claims may be only partly secured, creditors typically do not break their claims down into secured and unsecured components when submitting proofs of claim. Assuming that a debtor's automobile has depreciated since purchase, and that payments on the contract have not been made, the secured claim of a creditor like Ford Credit will exceed the value of its collateral.

Since the amounts on the creditor's proof of claim will be deemed allowed under § 502(a) unless objection is made, there are two courses of action available to the debtor. On the one hand, the debtor can take no action, and the Chapter 13 Trustee will pay the creditor's claim in full. While some debtors or their attorneys may not object because they have not realized that the secured claim is inflated, other debtors may not object because they intend to pay the full amount of the claim through their plans, or they may be deterred by the cost of asserting an objection.

█ Alternatively, the debtor may object to the creditor's claim, supporting its objection with evidence as to the value of the collateral. Generally, the evidence consists of a copy of a page from a used car value guide. Often, too, the proposed value in the debtor's motion to disallow the secured claim is greater than the value of the vehicle that was shown on the debtor's schedules. Under § 502(b), once the objection is made, the court is to determine the amount of the claim. In this burden-shifting process, ultimately the creditor must prove the amount of its claim. *In re The Medicine Shoppe*, 210 B.R. 310, 312 (Bankr.N.D.Ill.1997).

While the issue of claims allowance may be extensively litigated in more complex cases, in this court's experience, that is not what happens in Chapter 13 cases. Generally, after the debtor presents his or her motion to disallow the secured claim, counsel for both sides appear before the court, and the matter is expeditiously resolved. In many cases, because the total amount of the creditor's claim is not disputed, the parties simply reach an agreement as to the amount of the secured and unsecured components of the claim. Counsel for the debtor then charges a relatively modest fee for his services, and the fees are paid through the Chapter 13 plan after the court allows them.

The need to litigate the amount of the secured claim could, of course, be avoided if the debtor and creditor were to agree to the value of the creditor's secured claim. At a status hearing before this court, class counsel suggested that debtors might not object to the claims of creditors like Ford Credit if the creditors used a "reasonable basis," to value their secured claims, such as the retail value of the vehicle. Counsel did not address the other possibility that comes to mind, which is whether debtors could also avoid litigation by using retail prices to value their vehicles on their schedules.

### Ford Credit's Proof of Claim

In this case, the Debtor's schedules listed Ford Credit as a secured creditor holding a claim in the amount of $17,325.00. Schedule D stated that the value of the Debtor's automobile was $10,000.00, and that the unsecured portion of Ford Credit's claim was $7,325.00. Ford Credit filed a proof of claim on August 21, 1996, stating that it held a claim of $16,873.00, and that the claim was fully secured. The averment regarding Ford Creditor's secured claim is obviously incorrect, however, as the loan documents attached to the proof of claim show that the original price of the vehicle was $16,424.00. Since the value of the vehicle logically could not have increased in the year since it was purchased, Ford Credit's proof of claim overstated the value of its collateral. For reasons that have not been made known to the court, the Debtor did not object to Ford Credit's claim before her plan was confirmed on September 24, 1996.

On April 22, 1998, the Debtor moved to disallow Ford Credit's secured claim, but she soon withdrew the motion and filed this adversary complaint instead. In her complaint, the Debtor alleges that she filed her petition under Chapter 13 on August 6, 1996, over a year after she purchased an automobile financed through Ford Credit on May 20,1995. The complaint alleges that although the vehicle necessarily would have depreciated in that time interval, Ford Credit filed a proof of claim in which it characterized the full amount of the Debtor's unpaid loan balance as totally secured. The Debtor further contends that at the time the proof of claim was filed, the MSRP of a new vehicle was about $14,000.00, and that the September 1996 National Automobile Dealers Association book listed the retail value of her vehicle as $10,950.00.

Since the amount on Ford Credit's proof of claim exceeded even the price of a new vehicle, the Debtor concludes that the proof of claim grossly inflated Ford Credit's secured claim. According to the Debtor, Ford Credit regularly engages in this practice. In the Debtor's words,

> The effect of this practice is to give debtors a choice between paying inflated amounts to [Ford Credit] or incurring legal and appraisal fees to challenge [Ford Credit]'s bad faith claims. Because the claims are automatically allowed pursuant to 11 U.S.C. § 502 unless the debtor objects to them, the filing of a proof of claim which intentionally overvalues the security in the manner complained of herein necessarily inflicts injury on the debtor in one of these two ways.

Cmplt., ¶ 23. To redress the alleged abuse, the Debtor seeks to represent a class composed of Chapter 13 debtors in cases where Ford Credit has filed a proof of claim within the past five years. The common factor would be that Ford Credit's proof of claim listed the amount due on the debtor's account as the value of Ford Credit's collateral. Count I of the Debtor's complaint seeks relief pursuant to § 105 of the Bankruptcy Code, while the other two counts are brought under state law.

Ford Credit has moved to dismiss the complaint, noting that the Debtor has cited no cases authorizing an action of this nature. In its motion, Ford Credit denies that its proofs of claim contain false statements, since it can only speculate as to the value of a debtor's vehicle at the time it files a proof of claim. Looking to the text of § 506(a), Ford Credit argues that a claim need not be bifurcated until after the claim has been allowed. Because § 506(a) provides that secured status is determined "in conjunction with any hearing on such disposition or use [of the collateral] or on a plan affecting the creditor's interest," Ford Credit would find no obligation on the part of the creditor to value its collateral at the time it files a proof of claim.

Among other arguments made, Ford Credit contends that issues relating to the filing of a particular claim should be resolved within that debtor's bankruptcy case, and not in a separate lawsuit. Ford Credit observes that where a lender's proof is filed in bad faith, a debtor may seek sanctions and attorneys' fees under Bankruptcy Rule 9011. *See, e.g., In re McAllister,* 123 B.R. 393, 395 (Bankr. D.Or.1991); *Hamilton v. United States (In re Hamilton),* 104 B.R. 525, 527 (Bankr. M.D.Ga.1989) (sanctioning creditors filing proofs of claim not grounded in fact).

Ford Credit further argues that under § 1327(a), the order confirming a Chapter 13 plan is res judicata as to all issues decided or which could have been decided at the hearing on confirmation. *In re Ross,* 162 B.R. 785, 789 (Bankr.N.D.Ill.1993). *See also In re Chappell,* 984 F.2d 775, 782 (7th Cir.1993); *In re Puckett,* 193 B.R. 842, 845 (Bankr. N.D.Ill.1996). Because the Debtor's Chapter 13 plan was confirmed approximately a month after Ford Credit filed its proof of claim, the Debtor's objection is arguably now precluded.

There are grounds for disagreement on the question of res judicata, as historically in this district, Chapter 13 confirmation hearings are held prior to the expiration of the claims bar date under Bankruptcy Rule 3002. *Strong v. United States Dep't of Treasury (In re Strong),* 203 B.R. 105, 113 (Bankr. N.D.Ill.1996). *See also In re Church,* No. 96 B 18347, 1998 WL 97691 at *3 (Bankr. N.D.Ill.1998) (res judicata did not bar post-

confirmation determination of secured and unsecured components of claim, as matter was part of claims objections process taking place after confirmation). In this court's experience, objections to claims are often litigated after the confirmation of a debtor's plan.

The court finds it unnecessary to reach all the arguments made here, as Count I of the Debtor's complaint will be dismissed for failure to state a claim upon which relief may be granted.

### Decision on Count I

In Count I, the Debtor alleges that Ford Credit's claims filing practice "represents a calculated interference with the bankruptcy system," and she asks that the court require Ford Credit to first identify all improper proofs of claim filed, and then refund excess amounts collected. In addition, she seeks an order enjoining Ford Credit from filing similar claims in the future. As authority for that relief, the Debtor relies on Code § 105(a), which provides that,

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Since the Debtor does not point to any specific provision of the Code or Bankruptcy Rules imposing on a secured creditor a duty to obtain an appraisal of the value of its collateral before preparing a proof of claim, the order sought here would be directed at the prevention of an abuse of the bankruptcy process.

This court has substantial doubts as to whether the practice complained of here is necessarily abusive, as Code § 502 and Bankruptcy Rule 3007 contemplate a process in which both debtor and creditor may be heard with respect to the amount and validity of a claim. The submission of a proof of claim is only one step in the claims allowance process, with unresolved issues ultimately determined at a evidentiary hearing. Where, as here, the creditor has objected to the debtor's valuation of its automobile, the Supreme Court would characterize the case as a "cram down" situation in which the value of the secured claim "is the cost the debtor would incur to obtain a like asset for the same proposed use." *Associates Commercial Corp. v. Rash*, 520 U.S. ——, 117 S.Ct. 1879, 1886, 138 L.Ed.2d 148 (1997). "Whether replacement value is the equivalent of retail value, wholesale value, or some other value will depend on the type of debtor and the nature of the property." *Id.*, —— U.S. at —— - —— n. 6, 117 S.Ct. at 1886–87 n. 6.[2]

The court recognizes that there is potential for abuse if creditors do not break down their claims into secured and unsecured components on the proofs of claim that they file, especially if the debtor or the debtor's attorney fails to notice that the secured claim is greater than it should be. However, the authority given bankruptcy courts under § 105(a) is not without limits.

> ... Section 105(a) simply authorizes a bankruptcy court to fashion such orders as are necessary to further the purposes of the substantive provisions of the Bankruptcy Code ... Thus, it authorizes bankruptcy courts to issue injunctions and take other necessary steps in aid of their jurisdiction.

> While the bankruptcy courts have fashioned relief under Section 105(a) in a variety of situations, the powers granted by that statute may be exercised only in a manner consistent with the provisions of the Bankruptcy Code. That statute does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.

*United States v. Sutton*, 786 F.2d 1305, 1307 (5th Cir.1986). *See also Jones v. Internal Revenue Service (In re Jones)*, 129 B.R. 1003, 1011 (Bankr.N.D.Ill.), *aff'd*, 134 B.R. 274 (N.D.Ill.1991).

---

**2.** Interestingly, the creditor in *Rash* filed a proof of claim alleging that its claim was fully secured, while the debtor proposed to pay the creditor only the present value of the truck. *See* —— U.S. at ——, 117 S.Ct. at 1883.

Having reviewed the cases the Debtor cites in support of her claim in Count I, the court observes that in all cases where relief under § 105(a) was granted, the court's order was in aid of either the automatic stay under § 362(a) or the post-discharge injunction under § 524(a). Both provisions explicitly prohibit certain creditor activities with respect to prepetition liabilities of the debtor. The order the Debtor requests here would perhaps streamline the process for determining secured claims, but the Code's provisions for the allowance of claims and the decision in *Rash* all seem to contemplate that both debtor and creditor be afforded equal opportunity to advance their interests in the valuation process. Unlike the situation in the cases on which the Debtor relies, the practice complained of here has not been shown to violate any explicit statutory directive. *Compare In re Latanowich*, 207 B.R. 326, 333 (Bankr.D.Mass.1997) (enforcing post-discharge injunction); *Wiley v. Mason (In re Wiley)*, 224 B.R. 58, 65–66 (Bankr.N.D.Ill. 1998) (same).

■■■ A motion to dismiss under Fed. R.Civ.P. 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir.1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no facts in support of its claim that would entitle it to relief. *Travel All Over World v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 (7th Cir.1996). In ruling on the motion, the court accepts as true all facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir.1996). However, the court is not compelled to accept conclusory allegations regarding the legal effect of facts set out in the complaint. *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir.1996).

Even accepting as true the Debtor's allegation that Ford Credit regularly files proofs of claims in which the entire amount of its claim is characterized as secured, the court concludes that § 105(a) does not authorize the relief she seeks. Accordingly, Ford Credit's motion to dismiss Count I is granted.

### (2) *Counts II and III*

In Count II of her complaint, the Debtor complains that Defendants' practices are in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. 815 ILCS 505/1 *et seq.* Count III is a claim of unjust enrichment under the common law. The court will not consider the sufficiency of these claims at this point, as it raises *sua sponte* the question whether it has jurisdiction to decide them.

■■■ As a starting point, it must be noted that the claims in Counts II and III arise under state law. While the fact that state law applies is not in itself determinative of the jurisdictional issue, *see* 28 U.S.C. § 157(b)(3), the Debtor has the burden of establishing that her claims fall within the reference to the bankruptcy court of "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b); General Rule 2.33 of the United States District Court for the Northern District of Illinois.

■■■ As the term is defined at 28 U.S.C. § 157(b)(2), "core proceedings" arising under title 11 or arising in cases under title 11 are actions by or against a debtor where the Bankruptcy Code itself is the source of the claimaint's right or remedy. *In re United States Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997). Under 28 U.S.C. § 157(c), matters " related to a case under title 11" encompass legal claims by or against the debtor that, were it not for the bankruptcy, would ordinarily be stand–alone lawsuits in another forum. *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161 (7th Cir.1994). The Seventh Circuit holds that a cause of action is related to a bankruptcy case when resolution of the dispute will affect the amount of estate property for distribution to creditors or the allocation of property among creditors of the estate. *In re Fedpak Systems, Inc.*, 80 F.3d 207, 213–14 (7th Cir.1996).

■■■ It is also significant that the Debtor asserts claims on her own behalf and on behalf of other class members. The jurisdictional inquiry, then, may well lead to different results for the individual and class claims. This court is not the forum for the recovery of money that would not be property of this bankruptcy estate or of this Debtor. *Wiley v. Mason (In re Wiley)*, 224 B.R.

58, 64 (Bankr.N.D.Ill.1998). If the Debtor's class claims do not fall within the referral to the bankruptcy court of core or related matters, the only other basis for jurisdiction would be the district court's supplemental jurisdiction under 28 U.S.C. § 1367. As Judge Barliant has noted, though, that section confers supplemental jurisdiction upon the district court. *Fisher v. Federal Nat'l Mortgage Ass'n (In re Fisher)*, 151 B.R. 895, 899 (Bankr.N.D.Ill.1993). While district courts may have authority to hear supplemental claims relating to bankruptcy cases, the bankruptcy court does not have that authority. *Id.; see also Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 570–73 (5th Cir.1995); *Goldstein v. Marine Midland Bank, N.A. (In re Goldstein)*, 201 B.R. 1, 6–7 (Bankr.D.Me.1996).

This court will not address substantive issues under state law where it questions its jurisdiction to hear those claims. Before addressing Ford Credit's challenges to the merits of Counts II and III, it will therefore require that the parties brief the question of jurisdiction over those claims.

### Conclusion

Ford Credit's motion to dismiss is granted in part. Count I of the Debtor's complaint is dismissed for failure to state a cause of action. The court's decision regarding the Counts II and III will be deferred pending resolution of the question of jurisdiction.