In re Alice **LENIOR**, Debtor.

Alice Lenior, Plaintiff,

v.

**GE Capital Corporation and Rebecca Penski**, Defendants.

Bankruptcy No. 97 B 26087.
Adversary No. 98 A 00969.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 11, 1999.

Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Tara L. Goodwin, Edelman & Combs, Chicago, IL, for Plaintiff.

David B. Johnson, Bryan Krakauer, Danielle M. Streber, Sidley & Austin, Chicago, IL, for Defendant.

### MEMORANDUM OPINION ON DEFENDANTS' MOTION TO DISMISS

JACK B. SCHMETTERER, Bankruptcy Judge.

This Adversary case relates to the bankruptcy petition filed by plaintiff-debtor Alice Lenior ("Plaintiff") under Chapter 13 of the Bankruptcy Code. She filed this as a purported class action for herself and others assertedly harmed by defendants' allegedly common practice of filing in Chapter 13 cases secured claims of G.E. Capital knowingly

valuing the vehicular security higher than its actual value. The pending Amended Adversary Complaint is pleaded in three counts. Count I asserts that Defendants' conduct has been deceptive and violated the New York Consumer Fraud statute, New York General Business Law § 345. Count II rests upon 11 U.S.C. § 105 and seeks injunctive relief to stop the asserted practice and dollar remedy for all improper claims of the same nature. It also seeks "sanctions against defendants for their wrongful conduct," an order compelling Defendants to amend proofs of claim, a refund of overpayments and expenses, and for award of attorney's fees. Count III rests on a theory of unjust enrichment.

The defendants G.E. Capital Corporation ("GECC") and its "Legal Coordinator" Rebecca Penski (collectively "Defendants") moved to dismiss the Plaintiff's Amended Adversary Complaint ("Complaint"). For the following reasons, their Motion to Dismiss will be allowed to the extent of dismissing Counts I and III. However, Count II will be allowed to stand as an action to seek a "strip down" of the secured claim against Debtor to its actual value (if indeed that claim is inflated) and to recover overpayment, if any. Under that Count, litigation costs may also be recovered through Fed. R. Bankr.P. 9011 if violation of that Rule is found. However, prayers for class relief in Count II will be stricken, and the pending motion of Plaintiff for class certification will be stricken for lack of jurisdiction over the class claims and other reasons discussed hereinbelow.

### Standards on Motion to Dismiss

Defendants move this Court to dismiss Plaintiff's Complaint pursuant to Fed. R.Civ.P. 12(b)(6) made applicable to this proceeding through Fed. R. Bankr.P. 7012. For Defendant to prevail on its motion to dismiss, it must appear from the Amended Complaint that Plaintiff can prove no set of facts which could entitle it to relief. *Wolfolk v. Rivera*, 729 F.2d 1114, 1116 (7th Cir.1984). When deciding a motion to dismiss, the court must accept well-pleaded allegations of the complaint as true and views allegations in the light most favorable to the non-moving party.

*Id. Bontkowski v. First National Bank of Cicero*, 998 F.2d 459, 461 (7th Cir.1993); *Gorski v. Troy*, 929 F.2d 1183, 1186 (7th Cir.1991); *Janowsky v. U.S.*, 913 F.2d 393, 395 (7th Cir.1990).

### Pleadings

Allegations in the Amended Complaint are considered as true for purposes of this motion.

On November 4, 1995, Plaintiff purchased a new Astro van for the price of $20,022.50. She financed the purchase by means of a retail installment contract that was later assigned to GECC. In 1997, Plaintiff filed for protection under Chapter 13 of the Bankruptcy Code, and her Plan was confirmed on November 20, 1997. GECC (through Penski) filed its proof of claim in Plaintiff's Chapter 13 case. Plaintiff's suit alleges that the proof of claim listed the value of the used van, and also the secured portion of the claim, as $20,464.35, that is to say, an amount greater than the sale price of the van when it was new some two years earlier.

Plaintiff asserts that the collateral value thus claimed appears to consist of the total payments required on the retail installment contract including interest due, minus payments made. Plaintiff contends that this is an improper valuation method. Her Complaint cites two additional examples where GECC filed proofs of claim in the Chapter 13 cases of other debtors, claims that listed used vehicles as being worth more than the initial sales prices for the vehicles. She thereby suggests that GECC engages in a pattern or practice of filing inflated secured claims despite knowledge that the vehicles are worth less.

Plaintiff relies on § 506 of the Bankruptcy Code, Title 11 U.S.C., to show that the amount to be listed in any filed "secured claim" must be the actual value of property that is collateral for the debt. GECC knew, she contends, that the van had not appreciated between the time it was sold to Plaintiff and the time GECC filed its proof of claim, that vehicles of the sort financed by GECC depreciate after sale, and that GECC's agent knew all this when she filed the claim. Plaintiff further alleges that she will be dam-

aged as a result of GECC's conduct, because she will be forced to pay more interest than she would had GECC filed a proper proof of claim. While Plaintiff's Chapter 13 plan provides for 100% payment of both secured and unsecured claims, interest need only be paid in bankruptcy on the secured value of property subject to a secured claim, so the attempt by Defendants to collect interest on the unsecured portion of the GECC claim is said to have been improper.

Defendants make the following arguments to support granting their Motion to Dismiss: (1) Plaintiff asserts no valid claims in her own right; (2) all of her claims are barred by *res judicata* because the Complaint is an attempt to relitigate the Chapter 13 Plan confirmation hearing; (3) her claim asserted under 11 U.S.C. § 105 should be dismissed because there is no private right of action under that provision; (4) the claim for unjust enrichment should be dismissed; (5) the claim under New York's consumer fraud statute should be dismissed because it is preempted by the Bankruptcy Code; (6) Plaintiff does not allege conduct likely to mislead a reasonable consumer or conduct that actually misled her under the New York statute; and (7) Plaintiff fails adequately to plead injury under the New York statute.

## DISCUSSION

### Jurisdiction

The source of federal jurisdiction over bankruptcy matters is 28 U.S.C. § 1334. That provision grants district courts jurisdiction over bankruptcy cases and proceedings arising in or under Title 11 U.S.C., or related to a bankruptcy case. 28 U.S.C. § 1334.

The District Judges' bankruptcy authority may be delegated to Bankruptcy Judges under 28 U.S.C. § 157. In the Northern District of Illinois, the District Court has provided for such referral to Bankruptcy Judges under Local Rule 2.33(A).

■ Section 157 does not give bankruptcy judges full judicial power over all matters in which the district courts have jurisdiction under § 1334. With respect to proceedings other than the bankruptcy petition itself, § 157 allocates the jurisdiction created by § 1334 between "core" and "non-core" proceedings. Bankruptcy judges have authority to hear and determine core proceedings "arising under" Title 11 U.S.C. (the Bankruptcy Code) or "arising in" a case under Title 11, and have limited authority to hear and recommend disposition as to non-core proceedings "otherwise related to a case" under Title 11.

In this case, Plaintiff asserts claims not only on her own behalf but on behalf of other class members. Consequently, the jurisdictional inquiry leads to different results for her individual claims and claims asserted on behalf of a putative class.

■ A non-core proceeding "relates to" a case under Title 11 if the claim "affects the amount of property available for distribution or the allocation of property among creditors." *Pettibone Corp. v. Easley*, 935 F.2d 120, 123 (7th Cir.1991); *Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir.1990). Plaintiff's individual claim dispute and possible recovery in this case may well have that effect in bankruptcy. Clearly, therefore, there could be "related" jurisdiction over the Plaintiff's individual recovery sought by her. However, there is no need to speculate about that because core jurisdiction lies over resolution of the GECC claim and objections thereto. 28 U.S.C. § 157(b)(2)(B). Moreover, any request for sanctions under Fed.R.Bankr.P. 9011 lies within this Court's core jurisdiction. *In re Memorial Estates, Inc.*, 950 F.2d 1364, 1369–70 (7th Cir.1991), *cert. denied, sub nom. Cemco, Inc. v. Newman*, 504 U.S. 986, 112 S.Ct. 2969, 119 L.Ed.2d 589 (1992) (bankruptcy judge had jurisdiction to sanction claimant's attorney since sanction itself was "core" proceeding in which bankruptcy judge could enter final order).

■ The same cannot be said, however, about claims which Plaintiff asserts on behalf of class members asserted to be similarly situated who are debtors in other cases in this and other judicial districts. No core jurisdiction is specified in the statute for such claims. Moreover, class claims will not affect the amount of property available for distribution in this Plaintiff's case, nor will the class claims affect allocation of property among

this Plaintiff's creditors. This Court is not a forum for recovery of money that would not be part of the bankruptcy estate or of this Debtor. *Wiley v. Mason,* 224 B.R. 58, 64 (Bankr.N.D.Ill.1998); *Fisher v. Federal Nat'l Mortgage Ass'n.,* 151 B.R. 895, 897 (Bankr. N.D.Ill.1993) (finding no "related to" jurisdiction in a proceeding that involved claims of other Chapter 13 debtors where resolution of the claims would have no effect on the amount of property available in the class representative's estate or on allocation of property to the class representative's creditors). As a result, "related to" jurisdiction does not lie over the class claims alleged. Plaintiff argues that claims on behalf of the putative class members relate to their own Chapter 13 cases. However, the only bankruptcy "cases" referred to bankruptcy judges in this District are cases filed in this District, and only a limited number of those cases are assigned to this Judge pursuant to 28 U.S.C. § 157(a) and Local Rule 2.33(A). Plaintiff's Chapter 13 proceeding, not all the individual class members' Chapter 13 cases, is assigned here. *Fisher,* 151 B.R. at 897.

■ A proceeding "arises in" Title 11 if it encompasses administrative matters that arise only in bankruptcy cases, those being matters based on any issue created by Title 11, but without existence outside of bankruptcy. *In re Harris Pine Mills,* 44 F.3d 1431, 1435 (9th Cir.1995); *In re Wolverine Radio Co.,* 930 F.2d 1132, 1144 (6th Cir. 1991); *In re Wood,* 825 F.2d 90, 97 (5th Cir.1987). As with the "related to" jurisdiction, the putative class claims for unjust enrichment and consumer fraud and relief under § 105 do not "arise" in this Plaintiff's bankruptcy. These claims are in no way incident to administration of this Plaintiff's bankruptcy case.

■ A proceeding "arises under" Title 11 if it invokes a "substantive right" provided by Title 11 (*Barnett,* 909 F.2d at 981), that is if a cause of action is "created or determined" by a statutory provision under Title 11. *Harris Pine,* 44 F.3d at 1435; *Wolverine,* 930 F.2d at 1144; *Wood,* 825 F.2d at 96. Neither the unjust enrichment claim nor the New York consumer fraud claim invoke a substantive right created by federal bankruptcy law;

rather, those claims invoke rights created under state law. *See Barnett,* 909 F.2d at 981 (RICO claim brought by trustee of bankruptcy estate does not "arise under" Title 11, even though it accrued while the bankruptcy was pending and involved the trustee's rights under the Bankruptcy Code); *Fisher,* 151 B.R. at 898 (class action claims for violation of unfair and deceptive practice statute and breach of contract that accrued during Chapter 13 cases invoked rights created by state law and therefore did not arise under Title 11).

■ Although not mentioned in her Complaint, Plaintiff argues that § 506 of the Bankruptcy Code determines her cause of action. Plaintiff's class claims might require reference to § 506 of the Bankruptcy Code, but reference to provisions and policies of the Bankruptcy Code alone is not enough to confer "arising under" jurisdiction. *Fisher,* 151 B.R. at 898 (quoting *Marozsan v. U.S.,* 852 F.2d 1469, 1491 (7th Cir.1988) ("That a court inevitably will consider an issue of federal law to reach a final decision does not mean that the claim 'arises under' that law.")). Counts I and III assert causes of action that are created and determined by state law, even though they rest on contentions that a Bankruptcy Code requirement was not complied with.

Plaintiff requests class relief under 11 U.S.C. § 105 against Defendants' alleged calculated interference with the bankruptcy system but, as discussed below, § 105 is not the source of an independent cause of action nor does it invoke or provide any substantive rights or jurisdictional authority.

Moreover, while injunctive relief is within this Court's jurisdiction when an action may lie under the Bankruptcy Code, *see, e.g., Wiley v. Mason,* 224 B.R. 58 (Bankr.N.D.Ill. 1998), as discussed below, no action can arise to enforce § 506 of the Bankruptcy Code except as specified in the Code, which provides adequate relief at law for the alleged fault complained of and preempts any state law cause of action to enforce that provision.

Venue is proper under 28 U.S.C. § 1409(a).

### Class Certification Issues

█ Class determination must ordinarily be made prior to any dispositive ruling on the merits. *Koch v. Stanard*, 962 F.2d 605, 607 (7th Cir.1992); *Bennett v. Tucker*, 827 F.2d 63, 66–67 (7th Cir.1987); *Hickey v. Duffy*, 827 F.2d 234, 237 (7th Cir.1987). Fed. R.Civ.P. 23(c) (Fed. R. Bankr.P. 7023) requires that class determination be made "as soon as practicable after the commencement of an action brought as a class action."

█ If a class action is dismissed or ruled upon on the merits prior to certification of the class, only the named plaintiff is bound by the ruling. *Wiley*, 224 B.R. at 74 (citing *Benfield v. Mocatta Metals Corp.*, 1993 WL 148978, *2 (S.D.N.Y.1993)). Thus, any member of the putative class could still bring additional litigation against the defendant in a court having jurisdiction. *Id.* at 74. If, however, a class is certified prior to dismissal of any class action, class members who do not opt out would be bound by that ruling. *Id.*

The class issues under Fed. R. Bankr.P. 7023 (Fed.R.Civ.P. 23) have not yet been decided in this case. Issues of certification requested in the Amended Complaint and by motion are not yet fully briefed in all respects, though briefs on related jurisdictional issues were requested and filed. Since jurisdiction does not lie here over possible class claims for dollar recovery or even injunctive relief in this case, it would be singularly inappropriate for this Court to decide any class issues.

█ Rule 23(e) was designed to prevent representative plaintiffs from settling or voluntarily dismissing class actions to the detriment of absent members of the class. *Glidden v. Chromalloy American Corp.*, 808 F.2d 621, 626–27 (7th Cir.1986). Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1797 at 345. While several courts have suggested that a putative class action may not be dismissed without notice, the *Glidden* opinion showed that this is not always so. *Id.* at 627. "When notice would be a fruitless, yet costly gesture, Rule 23(e) ... does not compel the parties to incur pointless expense." *Id.* In this case, when the class parts of the Complaint are dismissed on defense motion, the Plaintiff will not thereby benefit.

A panel of the Seventh Circuit has gone beyond *Glidden* in *Cowen v. Bank United of Texas*, 70 F.3d 937, 941–42 (7th Cir.1995):

... The bank elected to move for summary judgment before the district judge decided whether to certify the suit as a class action. This is a recognized tactic, 2 Herbert B. Newberg and Alba Conte, Newberg on Class Actions § 7.03, P. 7–11 (3d ed.1992); 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1798, p. 433 (1986), and does not seem to us improper. It is true that Rule 23(c)(1) of the civil rules requires certification as soon as practicable, which will usually be before the case is ripe for summary judgment. *Bennett v. Tucker*, 827 F.2d 63, 67 (7th Cir.1987); *Watkins v. Blinzinger*, 789 F.2d 474, 475 n. 3 (7th Cir.1986). But "usually" is not "always," and "practicable" allows for wiggle room. Class actions are expensive to defend. One way to try to knock one off at low cost is to seek summary judgment before the suit is certified as a class action. A decision that the claim of the named plaintiffs lacks merit ordinarily, though not invariably, *Nelson v. Murphy*, 44 F.3d 497, 500 (7th Cir.1995); 1 Newberg & Conte, supra, § 2.27—illustrating the principle, to which naturally there are exceptions, that there are no valid generalizations about American law today—disqualifies the named plaintiffs as proper class representatives. The effect is to moot the question whether to certify the suit as a class action unless the lawyers for the class manage to fine another representative. *Hardy v. City Optical Inc.*, 39 F.3d 765, 770 (7th Cir. 1994); *Glidden v. Chromalloy American Corp.*, 808 F.2d 621, 626 (7th Cir.1986). They could not here because the ground on which the district court threw out the plaintiff's claims would apply equally to any other member of the class. After granting the defendant's motion for summary judgment, therefore, and since (as was predictable, given the district judge's ground) no one stepped forward to pick up

the spear dropped by the named plaintiffs, the judge denied the motion for class certification.

When the procedure that we have just described is followed, the defendant loses the preclusive effect on subsequent suits against him of class certification but saves the added expense of defending a class action and may be content to oppose the members of the class one by one, as it were, by moving for summary judgment, every time he is sued, before the judge presiding over the suit decides whether to certify it as a class action.

Accordingly, there being no jurisdiction in this Court to consider class relief, it is not necessary—and indeed would be foolish—to entertain class certification issues.

### *Plaintiff Has Adequate Remedies at Law:*

### *Money Damages, Lien Stripping, and Rule 9011 Sanctions*

Apart from monetary class relief for which this Courts lacks jurisdiction, Plaintiff seeks to protect class members through her request for injunctive relief. However, the Plaintiff has (and it would appear all others in the same boat have) perfectly adequate remedies at law that preclude issuance of injunctive relief. Moreover, Plaintiff lacks standing to seek that injunction.

Plaintiff requests an injunction prohibiting Defendants from filing in the future similar secured claims that are allegedly inflated. Because Plaintiff does not allege that she will file again for Chapter 13 protection, she lacks standing to seek an injunction. *Feit v. Ward,* 886 F.2d 848, 857 (7th Cir.1989). In *Feit,* the court found that plaintiff lacked standing to seek injunctive relief preventing defendant, his former employer, from disciplining or discharging its employees for exercising their first amendment rights. Because the plaintiff was no longer an employee of the company, the *Feit* opinion found that, even if the relief requested was granted to the plaintiff, he would not benefit. Nor would he be further affected by defendant's actions that were being complained of. *Id.*

 Similarly, Plaintiff here lacks standing to pursue her claim seeking an injunction prohibiting Defendants from filing inflated secured claims in the future. Defendants have already filed a proof of claim in Plaintiff's Chapter 13 case; therefore, even if the court were to grant the universal relief she requests, Plaintiff could not benefit. Nor would Plaintiff be affected by any future action in which the Defendants filed inflated secured claims. She would only be affected if she again filed for bankruptcy protection and again owed a secured debt to GECC that again required GECC to file a proof of claim. However, Plaintiff does not allege that she intends to file again for Chapter 13 protection. *Rivera v. Dick McFeely Pontiac, Inc.,* 75 F.R.D. 1, 2 (N.D.Ill.1977) (plaintiff lacked standing to seek an injunction against the defendant because he never intended to enter into another contract with the defendant). Our Circuit has expanded on that principle by holding that a party without a claim cannot be a class representative. *Robinson v. Sheriff of Cook County,* 167 F.3d 1155 (7th Cir.1999).

Plaintiff also seeks "injunctive relief … ordering Defendants to submit amended proofs of claim and refunding overpayments." In this regard, she claims damages to herself and others because, due to Defendants' filing an inaccurate proof of claim, she and others will pay more interest than they would have had Defendants filed accurate proofs of claim. She also seeks to stop what is asserted to be an improper common pattern and practice by Defendants of filing many inflated secured claims.

 One seeking an injunction bears the burden of establishing five requisite elements: (1) lack of adequate remedy at law; (2) that plaintiff will suffer irreparable harm if the injunction is not issued; (3) the resultant harm if the preliminary injunction is not granted outweighs the harm the defendant will suffer if the injunction is granted; (4) a reasonable likelihood of prevailing on the merits; and (5) that the injunction will not harm the public interest. *Somerset House, Inc. v. Turnock,* 900 F.2d 1012, 1014–15 (7th Cir.1990). "Though a plaintiff must satisfy each of the five elements to prevail," *id.* at 1015, the threshold burden is to show the first three factors. *Ping v. Nat'l Educ.*

*Ass'n,* 870 F.2d 1369, 1371 (7th Cir.1989); *Baja Contractors, Inc. v. Chicago,* 830 F.2d 667, 675 (7th Cir.1987); *In re Templeton,* 150 B.R. 214 (Bankr.N.D.Ill.1993).

 A plaintiff can show the inadequacy of the legal remedy "by demonstrating that damages will not adequately compensate him." *Crane v. Indiana High School Athletic Ass'n,* 975 F.2d 1315, 1326 (7th Cir.1992). Here, however, monetary damages (if proven) would adequately compensate Plaintiff, or any debtor similarly situated, because their asserted injuries are financial. Plaintiff's claim is therefore one that can be adequately remedied at law. *See Wisconsin Central Ltd. v. Public Service Comm'n of Wisconsin,* 95 F.3d 1359, 1369 (7th Cir.1996) ("With the question being one of monetary compensation, a plaintiff would be hard pressed to demonstrate either irreparable harm or an inadequate remedy at law").

Moreover, two specific and adequate procedural remedies are available to Plaintiff to obtain the monetary redress sought for asserted violation of § 506:(1) "lien stripping" pursuant to 11 U.S.C. § 506 itself, and (2) imposition of sanctions under Fed. R. Bankr.P. 9011.

Under the Bankruptcy Code, a creditor who claims that its debt is secured must state the value of its collateral on the proof of claim form, Official Form 10, and file it with the Clerk of the Bankruptcy Court. Instructions on Official Form 10 and in provisions of Bankruptcy Code § 506 make clear that a claim is unsecured to the extent that the value of such property is less than the amount claimed. Section 506 provides that an allowed claim "is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property."

 A secured creditor is thereby called on to apportion its claim between secured and unsecured, and its claim is secured only to the extent of the collateral value. 11 U.S.C. § 506. That portion of its claim in excess of the collateral value is unsecured.

 After a creditor files a proof of claim, the debtor may object to the claim pursuant to 11 U.S.C. § 502(b). A filed claim is deemed allowed unless objected to.

11 U.S.C. § 502(a). The Rules fix no time limit for filing an objection to allowance of a claim, though a court order may do so.

 A debtor is thereby permitted to modify the creditor's asserted rights to a secured claim through a process known colloquially as "lien stripping," by which an objection filed to the claim, if successful, "strips down" a creditor's lien so it can be satisfied by paying only the collateral value. *In re Bank One,* 183 B.R. 509, 512 (N.D.Ill.1995). Section 506(a) divides or bifurcates the creditor's claim into two components, partly secured, partly unsecured. Section 506(d) voids any lien against a debtor that is not an "allowed secured claim." Under § 502(b), once the objection is asserted, the amount of secured claim is to be determined by the bankruptcy judge after notice and a hearing. Ultimately, the creditor must prove the secured value of its claim. *In re The Medicine Shoppe,* 210 B.R. 310, 312 (Bankr.N.D.Ill. 1997).

 The "strip down" procedure is not the only remedy. Fed. R. Bankr.P. 9011 ("Rule 9011"), the Bankruptcy Rules' version of Fed.R.Civ.P. 11, allows imposition of sanctions on an attorney or unrepresented party for presenting pleadings, petitions, or written motions for an improper purpose or without factual basis. Rule 9011(b)(2) and (3) provides in part:

> By presenting to the court ... a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,——
>
> . . .
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically, so identified, are likely to have evidentiary support after a reasonable op-

portunity for further investigation or discovery;....

Proofs of claim that do not meet that standard can violate Rule 9011, and sanctions have been imposed under that Rule for the filing of improper claims. *See Hamilton v. United States (In re Hamilton)*, 104 B.R. 525 (Bankr.M.D.Ga.1989) (Rule 9011 sanctions imposed upon the IRS for filing a proof of claim for taxes not owed, that claim having been filed without prior reasonable inquiry); and *In re McAllister*, 123 B.R. 393 (Bankr. D.Or.1991) (sanctions imposed against Oregon Department of Revenue which filed proof of claim for income taxes allegedly owed by debtor when taxes were not in fact owed).

██ The standard used to determine whether a party made a reasonable inquiry before filing a claim is the reasonableness of its conduct under the circumstances. *In re Film Ventures Int'l Inc.*, 89 B.R. 80, 83 (9th Cir. BAP 1988).

In this case, the filed proof of claim form clearly states that "[a] claim is unsecured ... to the extent that the value of such property is less than the amount of the claim." Thus, the secured claim allegedly filed by Defendants clearly represented to the court that the amount listed as a "secured claim" was the "value of the property" serving as collateral for the debt. The claim as filed was not divided into unsecured and secured parts. Plaintiff alleges that the amount listed on Defendants' proof of claim was more than the value of the vehicle when it was sold as a new car two years earlier. She also alleges that Defendants knew that it had not appreciated between the time it was sold and the filing of the proof of claim. If that be proven, then it could be considered whether Defendants neglected their obligations to make reasonable inquiry into collateral value before filing the claims, and whether they should have filed a bifurcated claim. Such inquiry could result in sanctions under Rule 9011 if those are warranted.

As this Opinion is on a motion to dismiss, the Court must accept Plaintiff's well pleaded allegations as if true. Those allegations contend or at least imply that under the circumstances the Defendants did not make reasonable inquiry prior to filing of the GECC claim.

In any event, Plaintiff holds adequate remedies at law for her own claims that will stand after this ruling, and members of the asserted class can assert the same remedies in their own cases.

### Plaintiff's Claims Are Not Barred by Res Judicata

Defendants argue that all relief requested is a collateral attack on Plaintiff's confirmed bankruptcy plan, and that the Plan confirmation order is *res judicata* on all issues that were or could have been decided at the confirmation hearing. They argue that the value of security for GECC's claim was such an issue, and therefore the issue of such valuation cannot be raised here.

There is nothing alleged in the Complaint on this subject, and no motion for summary judgment has been filed, so this opinion cannot reach the *res judicata* issue based on asserted facts not now properly before the court. However, it is noted that authorities support reasoning that plan confirmation is not *res judicata* concerning value of the collateral unless that issue is specifically presented at the confirmation hearing. In cases that Defendants rely on for support, there were attempts through the confirmation process to change the valuation of security or challenge specific provisions of security agreements in ways set forth in proposed plans. *See In re Ross*, 162 B.R. 785 (Bankr. N.D.Ill.1993) (debtor sought to change valuation of collateral); *In re Pence*, 905 F.2d 1107 (7th Cir.1990) (creditor attempted after confirmation to challenge specific provisions in debtor's plan); *In re Puckett*, 193 B.R. 842 (Bankr.N.D.Ill.1996) (plan set forth exact amount to be paid to certain creditors who later challenged amount).

Those cases are distinguishable from Debtor's confirmed Chapter 13 plan which did not appear to value the GECC claim. Her Plan called for Plaintiff to pay 100% of secured claims and 100% of unsecured claims, but did not state the amount that GECC was to receive (although she scheduled GECC as having a secured debt smaller than the

amount GECC claimed). Therefore, Plaintiff is not attempting in this Adversary case to change any terms of her confirmed Plan, and the *res judicata* argument has no merit. *See also In re Holloway,* 98 B 4446 (B.J. Wedoff, June 17, 1998) (in argument concerning ability of a debtor to object to a claim post confirmation, court denied motion to dismiss the objection because plan there did not fix amount of any claim.) However, as noted, this issue cannot be reached on the present record.

### 11 U.S.C. § 105 Does Not Give Basis for Suit

Plaintiff asserts that Defendants intentionally interfered with the bankruptcy system through many improper claims filings, and that the relief requested in Count II should be granted pursuant to 11 U.S.C. § 105. Defendants argue that no private right of action arises under that provision of the Bankruptcy Code. Plaintiff counters that no private right of action is needed because bankruptcy judges in this District already have jurisdiction over Plaintiff's bankruptcy and every other bankruptcy in the Northern District of Illinois, and § 105 is only relied on to the extent it authorizes possible relief such as an injunction that can be awarded in a bankruptcy case in matters wherein the Court has jurisdiction.

 Section 105 provides a bundle of authorities for the bankruptcy judge to carry out jurisdiction supplied by other statutory sources. It certainly does not provide any cause of action allowing a plaintiff to bring an adversary action to recover for a defendant's allegedly fraudulent proofs of claim. Section 105 "delineates the limited equitable power of the bankruptcy courts" (*In re Fesco Plastics Corp., Inc.,* 996 F.2d 152, 154 (7th Cir. 1993)) when it provides that a bankruptcy judge may issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Under that provision, "a court may exercise its equitable power only as a means to fulfill some specific Code provision." *Id. See also In re Anderson,* 159 B.R. 830, 835 (Bankr.N.D.Ill. 1993) (stating "105 is generally viewed as a source of authority to enter necessary orders

only when authority to do so is otherwise found. The statutory language thus suggests that an exercise of section 105 power be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective") (quoting 2 *Collier on Bankruptcy* ¶ 105.01 at 105–4 (15th ed.1992)); *In re SPM Mfg. Corp.,* 984 F.2d 1305, 1311 (1st Cir.1993).

Therefore, there is no basis for Plaintiff's claims in Count II under § 105 unless she can demonstrate that Congress intended to create an implied private right of action. *Allison v. Liberty Sav.,* 695 F.2d 1086, 1088 (7th Cir.1982) (citing *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)).

 The United States Supreme Court has outlined a four part test to be used to determine the propriety of implying a private right of action: (1) Whether plaintiff is a member of a class for whose special benefit the statute was enacted; (2) whether there is any explicit or implicit indication of congressional intent to create or deny a private remedy; (3) whether a private remedy would be consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law. *Id.* (citing *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)). In application of that test, the four factors are not equally weighted. *Id.* The central inquiry is whether Congress intended to create a private right of action. *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15–16, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979).

Most courts addressing the issue have determined that no private remedies or private rights of action exist under § 105 without reference to other parts of the Bankruptcy Code. *Simmons v. Ford Motor Credit Co.,* 224 B.R. 879 (Bankr.N.D.Ill.1998) (Lefkow, J.) (holding that § 105 is not without limits and rejecting an independent right of action); *In re Costa,* 172 B.R. 954, 966 (Bankr. E.D.Cal.1994) (holding that, because "before the enactment of 362(h) ... courts generally declined to imply a damages cause of action" and "Congress responded by creating a compensatory and punitive remedy" via § 362(h), it follows that legislation similar to 362(h)

"would be necessary to create a private cause of action under § 105").

Plaintiff argues that *Simmons* is contrary to *Wiley v. Mason,* 224 B.R. 58 (Bankr. N.D.Ill.1998) in which this Court decided that injunctive relief could be provided to a systematic violation of the Bankruptcy Code provisions relating to reaffirmation of debt pursuant to 11 U.S.C. § 524. In *Wiley,* this Court denied a motion to dismiss and a motion for summary judgment, thereby upholding the possibility of a cause of action under § 524 of the Code. In that case, § 105 provided authority for the remedy found necessary to correct alleged systematic violation of 11 U.S.C. § 524. *Simmons* is not contrary to *Wiley* because, as *Simmons* pointed out, "in all cases where relief under § 105(a) was granted, the court's order was in aid of either the automatic stay under § 362(a) or the post-discharge injunction under § 524(a)" and "the practice complained of here has not been shown to violate any explicit statutory directive." Even accepting as true *arguendo* the Debtor's allegation in *Simmons* that defendant regularly filed proofs of claims in which the entire amount of its claim was wrongfully characterized as secured, it was concluded in *Simmons* that § 105(a) did not authorize the relief sought.

On a motion for reconsideration in *Simmons,* Bankruptcy Judge Lefkow reaffirmed dismissal of the class claims. No jurisdiction was found over class claims under either "related to" or "arising under" jurisdiction because the claims asserted causes of actions that "at heart ... are created and will be determined by state law." *Simmons v. Ford Motor Credit Co.,* No.98–A–00855, slip op. At 9 (Bankr.N.D.Ill. Feb. 9, 1999).

The Plaintiff is therefore not entitled to any remedy under § 105 because it has not been shown that Congress ever intended for that provision to serve as a private remedy against fraudulent or inflated proofs of claim.

There is additional persuasive reasoning in a recently decided opinion of District Judge Castillo cited as *Holloway v. Household Automotive Fin. Corp.,* 227 B.R. 501 (N.D.Ill. 1998). His opinion found that no private right of action can be implied under § 105 of the Code for alleged filing of fraudulently inflated claims. *Id.* at 505. In contrast to § 105, other sections of the Code such as § 362(h) expressly provide a private right of action for violation of its provisions. *Id.* Congress created the right of action under § 362(h) as part of other sweeping amendments to the Bankruptcy Code in 1984 (*see* Pub.L. No. 98–353, Section 304, 98 Stat. Code 353 (1984)), but enacted no similar amendments to § 105. *Id.*

Judge Castillo reasoned that implying a private right of action to remedy the submission of fraudulent proofs of claim would be inconsistent with the underlying legislative scheme where Congress has already provided an express remedy for such asserted abuses.

As shown earlier, very adequate and effective remedies are available through the Bankruptcy Code and Rules to redress improper claims filings. The non-class relief sought in Count II may be sought under those remedies. Therefore, Count II must stand to allow Plaintiff to seek reduction of the GECC claim and redress for litigation expenses and punishment for any wrongful filing that may be proven.

### The Claims for Unjust Enrichment (Count III) and Consumer Fraud Claim under New York Law (Count I) Should Be Dismissed as Preempted

Count III of Plaintiff's Complaint asserts that Defendants' pattern of filing proofs of claims represents a calculated interference by Defendants with the bankruptcy system that results in receipt of money under circumstances constituting unjust enrichment. Defendants argue that the claim for unjust enrichment is not available to Plaintiff because the only equitable remedy a bankruptcy court can dispense is one available under the Bankruptcy Code's equity provision, 11 U.S.C. § 105. Defendants reason that, because Plaintiff has no cause of action under that provision, she has no claim for unjust enrichment.

A claim for unjust enrichment is an equitable claim that arises when a party (1) receives a benefit; (2) the benefit is to the plaintiff's detriment; and (3) the defendant's

retention of that benefit would be unjust. *TRW Title Ins. Co. v. Security Union Title Ins. Co.*, 153 F.3d 822 (7th Cir.1998). Plaintiff alleges that she is required to pay more interest to Defendants than she would have to pay had Defendants filed a proper proof of claim. That assertion can be read to allege the necessary three elements required for unjust enrichment.

Count I of Plaintiff's complaint asserts that Defendants engaged in deceptive and unfair conduct in violation of the New York consumer fraud statute, New York General Business Law § 349, by mailing from its offices in New York inflated proofs of claim to clerks of Bankruptcy Courts in various states.

■ However, bankruptcy judges cannot award equitable relief independent of rights arising in or under the Bankruptcy Code. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) ("[w]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code"). *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir.1993). *See also In re Longardner & Assoc., Inc.*, 855 F.2d 455, 462 n. 9 (7th Cir.1988) (the Bankruptcy Code outlines the limited equitable power of the bankruptcy courts).

Although bankruptcy judges routinely deal with state law issues involving claims and lien rights asserted in bankruptcy, the Count I and III theories raise a very different problem, the question of preemption by the Bankruptcy Code of state law theories asserted as remedies for Bankruptcy Code violations.

■ The expansive reach of the Bankruptcy Code preempts virtually all claims relating to alleged misconduct in the bankruptcy courts. *Cox v. Zale, Del., Inc.*, 1998 WL 397841 at *5 (N.D.Ill. July 13, 1998) (state law consumer fraud claim preempted). Similarly, *see Holloway*, 227 B.R. at 501. In reaching the conclusion regarding preemption, *Cox* relied on *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 912–15 (9th Cir.1996), that held:

A mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code ... demonstrates Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike. While it is true that bankruptcy law makes reference to state law at many points, the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal.

*Id.* at 913.

*See also In re Shape, Inc.*, 135 B.R. 707, 708 (Bankr.D.Me.1992) (alleged unfair and deceptive business practice claim preempted because it was based solely on alleged violations of automatic stay provisions of the Bankruptcy Code and the state law cause of action relied on the Bankruptcy Code in order to obtain a state law remedy).

■ Plaintiff's claims for violation of the New York consumer fraud statute and unjust enrichment are intricately related and wholly dependent on asserted violations of the Bankruptcy Code. Without the Bankruptcy Code's requirement that GECC submit proofs of claim, and the Code's instruction concerning the appropriate method by which to value secured claims under § 506, Plaintiff would have no factual basis on which to bring an action here for deceptive conduct under the New York consumer fraud statute or unjust enrichment. *See Holloway*, 227 B.R. at 508.

The *Shape* opinion pointed out that the Bankruptcy Code provides a comprehensive scheme reflecting a "balance, completeness and structural integrity that suggest remedial exclusivity." *Id.* at 708, quoting *Periera v. Chapman*, 92 B.R. 903, 908 (C.D.Cal.1988). While it might be excessive to view the Bankruptcy Code as a fully consistent pattern of law (an outcome hardly possible in a feisty democracy wherein different interests contend and compromise before the Congress), *Shape* correctly concluded that, "where a federal statute was applicable, and had its own enforcement scheme and separate adjudicative framework, it must supercede any state law remedies." *Id.*

As with the issue regarding whether a private right of action arises under § 105, Judge Castillo found the Bankruptcy Code to provide its own comprehensive scheme to guard against fraud and remedy it. *Holloway*, 227 B.R. at 508. As earlier discussed, there is also a clear system providing remedies for inflated claims.

Both the unjust enrichment claim and the claim under New York law seek remedies for violations of the Bankruptcy Code for which the Code itself and Rules provide other remedies. Both Counts I and III are therefore preempted by the Bankruptcy Code. Because the action under New York law will be dismissed for that reason, there is no need to discuss other issues briefed pertaining thereto.

### CONCLUSION

For reasons set forth above, the Defendant's Motion to Dismiss will be allowed as to Counts I and III and as to class relief requested in Count II, thus leaving Count II pending only as an action seeking a strip-down of the GECC claim and sanctions for the filing of it.